**SLIP OP. 99-81**

**UNITED STATES COURT OF INTERNATIONAL TRADE**

_____

                                 :

AMMEX, INC.,                       :

                                 :

          Plaintiff,             :

                                 :        **Before:  WALLACH, Judge**

      v.                      :        **Court No.:  99-01-00013**

                                 :

                                 :

UNITED STATES,          :

                                 :

         Defendant.          :

                                 :

_____:

[Plaintiff's Motion For Discovery granted in part and denied in part]

                                              Decided:  August 13, 1999

Serko & Simon LLP (David Serko, Christopher M. Kane, and Jerome L. Hanifin), for Plaintiff.

David W. Ogden, Acting Assistant Attorney General; Joseph I. Liebman, Attorney in Charge, International Trade Field Office, Commercial Litigation Branch, Civil Division, United States Department of Justice (Amy M. Rubin); Beth C. Brotman, Office of Assistant Chief Counsel, United States Customs Service, Of Counsel, for Defendant.

## OPINION

## I

## INTRODUCTION

This case comes before the Court on Plaintiff's Motion For Discovery. In essence, Plaintiff requests that certain documents be added to the administrative record for Customs Headquarters Ruling 227385 and that discovery be allowed to provide the Court with a full explanation of Customs' decision in this matter. For the reasons below, the Court grants Plaintiff only limited discovery, since Plaintiff has generally failed to provide the Court with a reasonable basis to believe that the record as filed is incomplete, that agency decisionmakers exhibited bad faith or improper behavior, or that any other exception to the general limitation on discovery is applicable.

## II

## BACKGROUND

Underlying the parties' current discovery dispute is Plaintiff's challenge of Customs Headquarters Ruling 227385 of February 12, 1998 ("HQ 227385"). In HQ 227385, Customs reaffirmed a 1994 headquarters ruling which found that the activities of duty-free stores should not be extended to cover unidentifiable fungible goods, such as gasoline, when sold on a retail basis. In the 1994 ruling, Customs found, inter alia, that because gasoline could not be subject to marking or other identification under 19 U.S.C. §1555(b)(3)(D),[1] Customs would have no

---

[1]    In relevant part, 19 U.S.C. §1555(b) (1994), which governs "[d]uty-free sales enterprises," provides as follows:

(3) Each duty-free sales enterprise . . . (D) shall not be required to mark or

practical way of ensuring that the duty-free gasoline was "declared" when vehicles returned to the United States.  See Customs Headquarters Ruling 225287, June 27, 1994 ("HQ 225287"), at 4-5.

In HQ 227385, Customs revisited the issue of duty-free gasoline sales in light of Plaintiff's requests that Customs reconsider its 1994 ruling.  Analyzing the relevant legislative history of the Omnibus Trade and Competitiveness Act of 1988, which established legislative guidelines for Customs' administration of duty-free shops, Customs concluded that "the fact that Congress did not specifically reject Customs policy regarding the sale of gasoline by duty-free stores means that Congress did not object to such practice."  Id. at 8.  Thus, it reasoned, "in holding that gasoline and diesel fuel may not be sold by duty-free stores, it was proper to follow the precedent established by ruling letter 200396."[2]  Id.  Further, in HQ 227385 Customs also rejected Plaintiff's argument that, in allowing U.S. residents to apply merchandise purchased from a U.S. duty-free store against their $400 personal duty-free allowance, the Miscellaneous Trade and Technical Corrections Act of 1996 rendered Ruling Letter 200396 and HQ 225287 obsolete.  Besides pointing to the lack of any explicit Congressional intent to overturn these determinations, Customs observed that

---

otherwise place a distinguishing identifier on individual items of merchandise to indicate that the items were sold by a duty-free sales enterprise, unless the Secretary finds a pattern in which such items are being brought back into the customs territory without declaration.

[2]  In Ruling Letter 200396, the Assistant Commissioner of Customs' Office of Regulations and Rulings, Leonard Lehman, held that the activities of duty-free stores could not be extended to unidentifiable fungibles, such as gasoline sold on a retail basis, since Customs would have no practical way of ensuring that the gasoline was declared when it was returned to the United States.  Customs Ruling Letter 200396, Oct. 30, 1972, AR Doc. No. 4.  Ruling Letter 200396 was cited approvingly and quoted in HR 225287.  See HQ 225287 at 3.

the eligibility for a duty exemption does not exempt the imported merchandise from being subject to other customs laws. The exemption from duty depends on the status of the individual and the circumstances regarding the exportation of the goods, the time spent out of the United States, and the frequency of the claims for eligibility. In order to administer those requirements, the need for simple effective controls has not been lessened by the 1996 statutory change.

Id. at 12.

Pursuant to Plaintiff's challenge of HQ 227385, on February 24, 1999, Defendant filed a copy of the administrative record for both HQ 227385 and HQ 225287 with the Clerk of the Court, in accordance with USCIT R. 72. See Letter from Amy M. Rubin, U.S. Dept. of Justice Trial Attorney, to Raymond F. Burghardt, Clerk of the Court of International Trade, of 02/24/99. Plaintiff, however, believed the record to be incomplete and, in a letter dated March 5, 1999, requested that Defendant supplement the administrative record. Letter from David Serko, Plaintiff's Attorney, to Amy M. Rubin of 03/05/99, Attachment 2 to Plaintiff's Memorandum In Support Of Plaintiff's Motion For Discovery. Following a telephonic status conference with the parties on March 17, 1999, at which the Court was informed that supplementation of the administrative record might be necessary, the Court issued an order giving Defendant until March 31, 1999, to file any additional materials. On March 29, 1999, Defendant mailed a supplemental list of 43 documents to the Clerk of the Court, although the actual documents were mistakenly not included in the mailing. See Letter from John J. Mahon, U.S. Dept. of Justice Assistant Branch Director, to Raymond F. Burghardt of 3/31/99. On March 31, 1999, Defendant corrected its omission and submitted the actual 43 documents. See id.

Although Plaintiff and Defendant appear to have had further communications concerning the make-up of the administrative record, on April 19, 1999, Plaintiff filed its Motion For Discovery and its Memorandum In Support Of Plaintiff's Motion For Discovery (collectively, "Discovery Motion"). It is this Motion which is currently before the Court.

## III

## DISCUSSION

## A

**USCIT R. 72(a) Does Not Conclusively Define The Contents of The Administrative Record.**

Before analyzing the reasons why Plaintiff claims that discovery is appropriate, it is necessary to determine what constitutes the administrative record that the Court is to review. Defendant interprets USCIT R. 72(a) and 28 U.S.C. § 2635(d) as requiring the administrative record to contain only those documents that were actually considered by the decisionmaker in rendering the challenged decision. Defendant's Response To Plaintiff's Motion For Discovery ("Defendant's Response") at 2-5. Pursuant to this interpretation, Defendant argues that the administrative record in this case is, in fact, complete, as evidenced by the Declaration of John Durant, Director of Customs' Commercial Rulings Division, Office of Regulations and Rulings ("Durant Declaration"),[3] that every document considered by Customs' Office of Regulations and Rulings ("OR&R") in rendering HQ 227385 has been submitted to the Clerk of the Court. See id. at 2, 5. Accordingly, Defendant states, it "would not be an appropriate application of the relevant law" for the Court to allow Plaintiff to supplement the record with documents that were not considered by the actual decisionmaker. Id. at 6.

Although the Court generally agrees with Defendant that the administrative record need only include information that was directly or indirectly considered by the relevant agency decisionmakers, the Court does not agree that this principle is embodied in USCIT R. 72(a) or

---

[3] The Durant Declaration is included as Attachment 1 to Defendant's Response.

the corresponding U.S. Code provision, 28 U.S.C. § 2635(d) (1994).[4]  In relevant part, USCIT R.

72(a) provides that

> in all actions in which judicial review is upon the basis of the record made before an
> agency . . . the agency shall file with the clerk of the court the items specified in
> paragraphs (a), (2) and (3) of this subdivision (a), if they exist, and the certified list
> specified in paragraph (4) of this subdivision (a), as part of the official record of the civil
> action.
>
> > (1)    A copy of the contested determination and the findings or
> >        report upon which such determination was based.
> > (2)    A copy of any reported hearings or conferences conducted by the
> >        agency.
> > (3)    Any documents, comments, or other papers filed by the public,
> >        interested parties, or governments with respect to the agency's
> >        action. . . .
> > (4)    A certified list of all items specified in paragraph (1), (2) and (3) of
> >        this subdivision (a).

A close reading of USCIT R. 72(a) reveals that, as indicated by its title, "DOCUMENTS

FURNISHED IN ALL OTHER ACTIONS BASED UPON THE AGENCY RECORD," this

Rule simply provides for the delivery of certain documents from the agency involved to the Clerk

of the Court.  Although paragraphs (1)-(4) of Subsection (a) define those documents which, in

the normal course, will constitute the administrative record for a particular determination,

nothing in USCIT R. 72(a) indicates that this Rule is meant to strictly delineate, or in any way

limit, the materials that the Court should examine in reviewing agency action.  In this regard, a

useful contrast can be drawn between USCIT R. 72(a) and USCIT R. 71(f).  USCIT R. 71(f),

entitled "FILING OF THE RECORD WITH THE CLERK OF THE COURT - WHAT

---

[4]  For present purposes, the language of 28 U.S.C. § 2635(d) (1994) is effectively the
same as that of USCIT R. 72(a).  Accordingly, although, for simplicity, the Court will frame its
analysis only in terms of USCIT R. 72(a), all references to this rule should be deemed references
to both USCIT R. 72(a) and 28 U.S.C. § 2635(d) (1994), unless otherwise provided.

CONSTITUTES," makes clear that the submission of documents in accordance with either subdivision (a) or (b) of USCIT R. 71 constitutes the "filing of the record" in antidumping and countervailing duty cases. USCIT R. 72 contains no comparable provision. Had USCIT R. 72 been intended to similarly delineate the scope of the record that this Court is to review, it would contain a similar provision.[5]

In its Motion For Discovery, Defendant argues that its interpretation is supported by the only case from this Court which discusses USCIT R. 72(a) at any length, National Corn Growers Ass'n v. Baker, 10 CIT 345, 636 F. Supp. 921 (1986), rev'd on other grounds, 840 F.2d 1547 (Fed. Cir. 1988). In that case, like this one, the plaintiffs asked that supplemental documents be added to the administrative record. In response, the government submitted an affidavit of an official directly involved in the decision at issue, John T. Roth. Mr. Roth stated that many of the documents that the plaintiffs sought to introduce were not before the decisionmaker at the time of decision and, therefore, were not considered by the government to be part of the record. Id. at 347-48, 636 F. Supp. at 927-29. The plaintiffs challenged this interpretation of what constitutes

---

[5] The fact that USCIT R. 71 has a provision defining "WHAT CONSTITUTES" the filing of the record, while USCIT R. 72 does not, is not surprising, given the different subjects addressed by these Rules. The more specific definition of the scope of the record for antidumping ("AD") and countervailing duty ("CVD") determinations provided for in USCIT R. 71(a), (b) and (f) parallels the relevant statutes and regulations defining the official record for such proceedings. Compare USCIT R. 71(a) with 19 U.S.C. § 1516a(b)(2)(A) (1994) (defining the record for review in AD and CVD cases); 28 U.S.C. § 2635(b)(1) (1994) (filing of official documents for AD and CVD cases); 19 CFR § 207.2(f) (1999) (defining the term "record" in ITC injury determinations); and 19 CFR § 351.104(a) (1999) (setting out the materials that constitute the "Official record" for ITA dumping determinations). In contrast, USCIT R. 72 is essentially a basket provision that covers document production in "ALL OTHER ACTIONS BASED UPON THE AGENCY RECORD." Because such actions may involve different agencies, different types of determinations, and different standards of review, it would seem inappropriate for USCIT R. 72 to contain a single provision listing the materials that would constitute the "administrative record" for all purposes.

"the record" and argued that many of the documents it sought to introduce came within the terms

of USCIT R. 72(a) and, accordingly, should be included in the administrative record.  Id. at 347,

636 F. Supp. at 928.

Addressing these contentions, the Court noted that, in light of the actual dictates of

USCIT R. 72(a) and Mr. Roth's repeated statements that he had included in the record several

documents that do not fall within the scope of this Rule, "it is difficult to discern why a number

of documents discovered by the plaintiffs and proffered to supplement the record were not

included in the first place."  Id. at 348, 636 F. Supp. at 928.  Nevertheless, the Court held that

> [n]otwithstanding the varying degrees of apparent relevance of the foregoing
> documents, they are not part of the administrative record according to the Roth
> affidavit, i.e., they were not before the decisionmaker at the time of decision.  In
> the face of such a certification, the court is not at liberty to hold otherwise simply
> on the grounds of production during discovery and relevance, which is all the
> plaintiffs show.

Id. at 348, 636 F. Supp. at 929.

In its Response, Defendant cites this holding as supporting its interpretation of USCIT R.

72(a).  See Defendant's Response at 4-5.  The Court does not agree.  Nowhere in National Corn

Growers did the Court indicate that its decision not to supplement the administrative record with

certain documents that were not before the decisionmaker was based on an interpretation of

USCIT R. 72.  In fact, if anything, National Corn Growers reinforces the idea that USCIT R.

72(a) does not, per se, define those documents that the Court is (or is not) to review.  As noted

above, in National Corn Growers the Court acknowledged that various correspondence between

the plaintiffs and Customs appeared to fall within the coverage of USCIT R. 72(a).  National

Corn Growers, 10 CIT at 348, 636 F. Supp. at 928 ("In view of . . . the dictates of [USCIT R.

72(a)], it is difficult to discern why a number of documents . . . proffered to supplement the record were not included in the first place."). Nevertheless, the Court decided, in light of the Roth affidavit stating that these correspondence were not before the agency decisionmaker, that these documents were not part of the official record. See id. at 348, 636 F. Supp. at 929. Presumably, had the Court viewed USCIT R. 72(a) as conclusively defining the contents of the administrative record for review, it would have included that correspondence in the record notwithstanding Mr. Roth's affidavit.[6]

In short, although the Court agrees with Defendant that a document does not belong in the administrative record simply because it is "relevant" to the issue that was before the agency, it does not agree that this general principle is embedded in USCIT R. 72(a). While USCIT R. 72 is the starting place for determining the contents of the administrative record for review, it is not the final word on the subject. Rather, to evaluate the merits of Plaintiff's Discovery Motion, it is necessary for the Court to go beyond USCIT R. 72 and look to other sources for guidance; namely, the significant case law interpreting 5 U.S.C. § 706 (1994). To such an examination the Court now turns.

---

[6] Nothing in the other cases in which this Court has considered USCIT R. 72 or 28 U.S.C. § 2635(d) leads to a different result. See Humane Society of the United States v. Brown, 19 CIT 1104, 1117, 901 F. Supp. 338, 350 (1995); Humane Society of the United States v. Brown, 920 F. Supp. 178, 183 (1996); Former Employees of Shaw Pipe, Inc. v. United States Secretary of Labor, 957 F. Supp. 239, 245 (CIT 1997); Humane Society of the United States v. Clinton, 44 F. Supp.2d 260, 264-65 (CIT 1999).

**B**

**Plaintiff Is Entitled to Limited Discovery.**

**1**

**Where Review Is Based on the Agency Record,
Discovery Is Allowed Only in Limited Circumstances.**

Should the Court reach the merits of this dispute, it will review Customs' decision, per 5

U.S.C. § 706(2)(A) (1994), to determine whether it was "arbitrary, capricious, an abuse of

discretion, or otherwise not in accordance with law."  See 28 U.S.C. § 2640(e) (1994).  In

conducting such a review, the Court is to "review the whole record or those parts of it cited by a

party."  5 U.S.C. § 706 (1994) (emphasis added).  While, on its face, this simple reference to the

"whole record" provides courts with little guidance as to what materials they are to review, a

substantial body of case law has helped to develop standards for what constitutes the "whole

record."

In Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 420 (1971), the

Supreme Court stated that a review of the "whole record" under § 706 "is to be based on the full

administrative record that was before the Secretary at the time he made his decision."  As

subsequently interpreted by the lower courts, the "whole" administrative record has come to be

seen as "'all documents and materials directly or indirectly considered by agency decisionmakers

and includes evidence contrary to the agency's position.'"  Thompson v. United States Dep't of

Labor, 885 F.2d 551, 555 (9th Cir. 1989) (quoting Exxon Corp. v. Dep't of Energy, 91 F.R.D. 26,

33 (N.D. Tex. 1981)); see also Bar MK Ranches v. Yuetter, 994 F.2d 735, 739 (10th Cir. 1993)

("A review under this standard is generally based on the full administrative record that was

before all decision makers . . . at the time of the decision."); Portland Audobon Society v.

Endangered Species Committee, 984 F.2d 1534, 1548 (9th Cir. 1993) ("'The whole record'

includes everything that was before the agency pertaining to the merits of its decision.").


In compiling an administrative record, relevant materials that were neither directly nor

indirectly considered by agency decisionmakers should not be included.  National Corn Growers,

10 CIT at 348, 636 F. Supp. at 929 ("Notwithstanding the varying degrees of apparent relevance

of the foregoing documents, they are not part of the administrative record according to the Roth

affidavit, i.e., they were not before the decisionmaker at the time of decision."); see also Camp v.

Pitts, 411 U.S. 138, 142 (1973) (overruling remand instruction that, effectively, ordered the trial

court to "put aside the extensive administrative record" and consider, inter alia, "'any other

relevant evidence'"); Bar MK Ranches, 994 F.2d at 739 ("[A]s long as Defendants submitted all

documents and information considered and developed at all three stages of the [agency's]

decision and review process, nothing more and nothing less, the Administrative Record

submitted to the district court was correct.").  That said, however, "'a document need not literally

pass before the eyes of the final agency decision maker to be considered part of the

administrative record.'"  Miami Nation of Indians v. Babbitt, 979 F. Supp. 771, 777 (N.D. Ind.

1996) (quoting Clairton Sportsman's Club v. Pennsylvania Turnpike Commission, 882 F. Supp.

455, 464 (W.D. Pa 1995)).  If the relevant agency decisionmakers considered, even indirectly,

any internal guidelines, memoranda, manuals or other materials in reaching its decision, those

materials should be included in the record.  See id.


In a case like this, where an agency has presented a certified copy of the complete

administrative record, "[t]he court assumes the agency properly designated the Administrative

Record absent clear evidence to the contrary."  Bar MK Ranches, 994 F. 2d at 740.  Despite this

assumption, however, courts have recognized various circumstances in which parties are allowed to conduct discovery and, if appropriate, complete or supplement the record certified by the agency.

First, where a party demonstrates that there is a reasonable basis to believe that materials considered by agency decisionmakers are not in the record, limited discovery has been allowed to complete the record. In order to provide such a "reasonable basis," a party must do more than simply allege that the record is incomplete. Rather, a party must provide the Court with reasonable, non-speculative grounds to believe that materials considered in the decision-making process are not included in the record. See Saha Thai Steel Pipe Co. v. United States, 11 CIT 257, 262, 661 F. Supp. 1198, 1203 (1987) ("'reasonable basis' test requires more than mere speculation"); accord Sachs Automotive Products Co. v. United States, 17 CIT 290, 293 (1993); see also Armco Inc. v. United States, 13 CIT 387, 388, 712 F. Supp. 214, 216 (1989) (citing Public Power Council v. Johnson, 647 F.2d 791, 794 (9th Cir. 1982)) (discovery outside the administrative record is permissible "when it appears that the agency has relied upon documents not included in the record.").[7]

---

[7] For instance, in Tenneco Oil Co. v. Dep't of Energy, 475 F. Supp. 299, 317 (D. Del. 1979), the trial court found that, although the record submitted by the agency contained a party's submissions to the agency, as well as the agency's formal decisions and orders, the record lacked the internal memorandums and guidelines that one would expect to exist. As the court reflected, "[i]t strains the Court's imagination to assume that the administrative decision-makers reached their conclusions without reference to a variety of internal memoranda, guidelines, directives, and manuals, and without considering how arguments similar to Tenneco's were evaluated in prior decisions by the agency." Tenneco Oil, 475 F. Supp. at 317. Accordingly, the Tenneco Court allowed interrogatories and discovery requests to be served on the agency, in order to compile a complete administrative record. Id.; see also Miami Nation of Indians, 979 F. Supp. at 778 (ordering the Department of Interior to add to the record various draft reports, notes, logs, guidelines, directives, manuals and other materials considered by the agency); cf. Marathon Oil Co. v. United States, 17 Cl. Ct. 116, 122 (1989) (distinguishing Marathon and Tenneco on the grounds that "there is nothing before the court which draws the existing certified record into question, and thus no reason to ignore the general limitation on discovery in these circumstances").

In addition to circumstances where the record reasonably appears incomplete, discovery has been allowed in limited circumstances to supplement the record already in existence. For example, discovery is permissible where an agency's failure to adequately explain its actions frustrates effective judicial review. Camp, 411 U.S. at 142-43 (1973); Overton Park, 401 U.S. at 420. In such a situation, "[t]he court may require the administrative officials who participated in the decision to give testimony explaining their action," since doing so "may be . . . the only way there can be effective judicial review." Overton Park, 401 U.S. at 420. As the Supreme Court has cautioned, however, such an inquiry into the mental process of decisionmakers is usually to be avoided. Id.

Discovery has also been recognized as appropriate when a party makes a "strong showing of bad faith or improper behavior" by agency decisionmakers. See id. In order to make such a "strong showing," a party must provide a reasonable factual basis for its contention. Apex Construction Co. v. United States, 719 F. Supp. 1144, 1147 (D. Mass. 1989). "In other words, a plaintiff cannot institute discovery in a case involving review of an agency's action simply in the hope of finding something wrong in what the agency did." Id.

Finally, discovery outside the administrative record is also allowed to permit an explanation or clarification of technical terms in the record. Armco, 13 CIT at 388-89, 712 F. Supp. at 216 (citing Public Power Council, 674 F.2d at 794). For instance, in Asarco, Inc. v. United States EPA, 616 F.2d 1153, 1160 (9th Cir. 1980), the Ninth Circuit noted that it could be proper for a trial court to consider evidence outside the record as background information. As the Asarco Court stated:

[I]t is both unrealistic and unwise to "straightjacket" the reviewing court with the

administrative record.  It will often be impossible, especially when highly
technical matters are involved, for the court to determine whether the agency took
into consideration all relevant factors unless it looks outside the record to
determine what matters the agency should have considered but did not.

Asarco, 616 F.2d at 1160; see also Bunker Hill Co. v. EPA, 572 F.2d 1286, 1292 (9th Cir. 1977)

(finding that, where highly technical issues involving the Clean Air Act were at issue, it was not

error for the court to request augmenting materials that "were merely explanatory of the original

record").


It is against this backdrop that the Court evaluates Plaintiff's Motion For Discovery.


**2**


**With Limited Exceptions, Plaintiff Has Failed to Provide a Reasonable
Basis to Believe That the Administrative Record Is Incomplete Or
That Certain Technical Terms in the Record Require Explanation.**


In its Discovery Motion, Plaintiff alleges that the administrative record is incomplete for

four reasons: (1) the record is missing documents which were considered by Customs; (2)

Customs has insufficiently identified various references contained on materials already in the

record; (3) Customs has failed to present any documents outside those contained in the "official"

file at Customs Headquarters; and (4) Customs has failed to place into the record any notes or

memoranda referencing various meetings that took place between Customs and Ammex

representatives.  In light of these alleged deficiencies, Plaintiff asks that the Court allow it to

request production from Defendant of various documents referenced in its Discovery Motion.


Plaintiff also asks the permission of the Court to

file written interrogatories with the defendant and take depositions, as necessary,
to determine whether any notes or memoranda of meetings known to have
occurred between representatives of Ammex and Customs personnel exist which
are not reflected in the administrative record; to request production of any such
documents and for Customs to provide identification of certain notations
contained in documents already part of the administrative record.

Discovery Motion at 7.

Within each of the categories listed above, Plaintiff discusses numerous examples of why

supplementation of the record, or discovery, is allegedly appropriate. For the sake of

convenience, the Court will adhere to the categories laid-out by Plaintiff.

**a**

**With Three Exceptions, Plaintiff Has Failed to Provide a Reasonable Basis to
Believe That Various Documents May Be Missing from the Administrative Record.**

On pages 9-11 of its Discovery Motion, Plaintiff lists the following as materials that are

either incomplete or should have been included in the administrative record:

1)      Pages 2 and 3 of a facsimile transmission dated July 15, 1997 (the cover sheet, which
        indicates that it is page 1 of 3 pages, is currently in the record as AR Doc. No. 47);

2)      A letter from Customs Detroit to Ammex dated April 6, 1994;

3)      A letter from Customs Detroit to Ammex dated May 6, 1994;

4)      A July 25, 1994, letter from Ammex to Customs Headquarters which "informed Customs
        Headquarters personnel that Ammex was aware that Customs Detroit had forwarded to
        Customs Headquarters a request for internal advice on Ammex's application to be
        allowed to sell duty-free gasoline." Id. at 10. Plaintiff further notes that this letter "asked
        that prior to any decision being made, Ammex be allowed to met [sic] with Headquarters

personnel." Id.;

5)     A July 7, 1997, letter from Commissioner Weise to Serko & Simon "referencing the issue
       of duty-free sales of gasoline and reflecting considerations of non-statutory, irrelevant or
       extraneous factors such as 'the economic interests of other states . . . and the general
       public' while confirming a meeting on July 17, 1997 between representative [sic] of
       Ammex and Deputy Commissioner Samuel Banks," id.;

6)     AR Doc. No. 24, "a handwritten memorandum, referenc[ing] training manuals and record
       keeping procedures that were clearly reviewed but were not placed in the administrative
       record," id.; and

7)     AR Doc. No. 31, "a handwritten memorandum dated December 23, 1996, referenc[ing]
       the FLETC handbook," id.

**i**

**Plaintiff Has Not Provided a Reasonable Basis to Believe That the Letters of**

**July 25, 1994, and July 7, 1997, Were Considered By Customs' Decisionmakers.**

Through its Discovery Motion, Plaintiff argues that the letters of July 25, 1994, and July

7, 1997, (items # 4 and # 5 ) should be part of the administrative record.  Upon review of these

documents, however, the Court finds that nothing in their subject matter provides a reasonable

basis to believe that Customs' decisionmakers considered them in deciding HQ 227385.  These

letters concern, respectively, a 1994 request by Plaintiff to meet with Customs officials and a

l997 letter from Customs confirming a meeting between Mr. Samuel Banks, Customs Deputy

Commissioner, and Plaintiff's lawyers on July 17, 1997.  While these letters obviously relate to

the issue of duty-free gasoline sales, nothing in their substance goes to the issues that were

decided in either HQ 227385 or HQ 225287:  whether gasoline could be subject to marking or

other identification under 19 U.S.C. § 1555(b)(3)(D), whether the Omnibus Trade and

Competitiveness Act of 1988 affected the issue of duty-free gasoline sales, and whether the 1996

Act allowing U.S. residents to apply merchandise purchased from a U.S. duty-free store against their $400 personnel duty-free allowance rendered Customs' previous opposition to duty-free gasoline sales obsolete.  Accordingly, absent evidence to the contrary, which Plaintiff has not provided, there is no reason to presume that Customs' decisionmakers considered these documents, even indirectly, in deciding HQ 227385.

**ii**

**Plaintiff Has Not Provided a Reasonable Basis to Believe That the 1994 letters from Customs to Ammex Were Considered By Customs' Decisionmakers.**

Similarly, Plaintiff has failed to provide the Court with a reasonable basis to believe that the 1994 letters from Customs to Ammex (items # 2 and # 3) were either directly or indirectly considered by Customs' decisionmakers in relation to HQ 227385.  In arguing that these letters should be included in the record, Plaintiff notes that "[t]hese letters are part of a series of exchanges between Ammex and Customs Detroit regarding qualification of Ammex's facility at the Ambassador Bridge in Detroit as an exit point" and that "[t]he defendant has all but conceded that these documents should be part of the administrative record" by placing in the record letters relating to the same subject.  Discovery Motion at 9.

While, on its face, this observation raises some questions as to why Customs' decisionmakers would consider some letters regarding the qualification of Ammex's facility as an exit point, but not others, any doubts concerning this issue are resolved by the Declaration of John Durant.  As an attachment to its Response, Defendant submitted the Durant Declaration, which states that the administrative record as filed "includes every document in OR&R file '227385', as well as '225287.'"  Durant Declaration at ¶ 5.  Given this declaration from the

director of the office within Customs that formulated and drafted HQ 227385 (OR&R), this Court is not at liberty to hold that the administrative record as filed could be incomplete, absent a significant showing to the contrary.  See National Corn Growers, 10 CIT at 348, 636 F. Supp. at 928-29; Bar MK Ranches, 994 F.2d at 740 (finding, in the face of sworn affidavits from the agency that the administrative record filed with the district court was properly designated, that "Plaintiffs have failed to carry their burden of clearly establishing that the Administrative Record was improperly designated").[8]

In this case, Plaintiff has failed to make such a showing.  In its Discovery Motion, Plaintiff notes that "[i]t was during the process of qualifying Ammex's facility as an exit point that the issue of duty-free sales of gasoline first arose."  Discovery Motion at 9-10.  At best, this establishes that the letters Plaintiff seeks to have placed in the record have some tangential relationship to the issues surrounding HQ 227385.  Given this tangential relationship, the fact that the existing record may contain some related materials does not provide the Court with a reasonable basis to believe that the letters Plaintiff seeks to have added to the record were before Customs' decisionmakers when they decided HQ 227385, and it certainly does not provide the quality of proof that is required to overcome the Durant Declaration.

---

[8]  On page 8 of its Discovery Motion, Plaintiff attempts to distinguish Bar MK Ranches on the grounds that "the defendant has already supplemented the administrative record in this case by providing 44 new documents, almost three times as many documents that were originally certified and filed with the Court as the complete administrative record."  Discovery Motion at 8. Without more, however, the Court does not find Plaintiff's argument persuasive.  As discussed infra, although Plaintiff does identify some instances in which the record may be incomplete, notwithstanding the Durant Declaration, these omissions (if they exist) appear to be quite minor. Similarly, although Defendant did supplement the record with a substantial amount of documents, this supplementation was done in an expeditious manner, with no indication of bad faith on the part of the government.  Further, the record, as now supplemented, appears on its face to be substantially complete and susceptible to judicial review.  Accordingly, the Court does not find sufficient evidence of omissions to discredit the Durant Declaration and distinguish this case from Bar MK Ranches.

**iii**

**Plaintiff May Conduct Limited, Written Discovery Concerning the Missing Pages**

**from AR Doc. No. 47, as Well as the Training Manuals, Record Keeping**

**Procedures and Handbook Referenced in AR Doc. Nos. 24 and 31.**

Turning to items # 1, # 6 and # 7, the Court does find a reasonable basis to believe that

the materials referred to in this record evidence were actually considered by Customs'

decisionmakers, notwithstanding the declaration of John Durant. In regard to the facsimile

transmission dated July 15, 1997 (AR Doc. No. 47), the Court finds it difficult to conceive,

absent specific proof to the contrary, that while Customs' decisionmakers considered the cover of

a three-page facsimile transmission, they did not consider the other two pages. Similarly, both

AR Docs. No. 24 and No. 31 reference training manuals, record keeping procedures and a

particular handbook that, by all appearances, were likely considered in deciding HQ 227385. See

AR Doc. No. 24 ("I would ask shop to provide copies of training manuals and recordkeeping

procedures that are in place to prevent abuse."); AR Doc. No. 31 (handwritten reference to

"Custom Law Handbook FLETC"). Accordingly, the Court grants Plaintiff limited, written

discovery to determine (a) the nature of the training manuals, record keeping procedures and

handbook referred to in AR Doc. Nos. 24 and 31, and (b) whether these materials, or the two

missing pages from AR Doc. No. 47, were considered by Customs' decisionmakers in deciding

HQ 227385.[9] See Miami Nation of Indians, 979 F. Supp. at 777 ("If the Department . . . directly

---

[9]  The Court notes that the reference to "Custom Law Handbook FLETC" also contains a reference to the name "Dolores Beitl." Plaintiff may conduct limited, written discovery concerning the identity of Dolores Butt, to the extent necessary to allow it to determine the nature of the Customs Law Handbook FLETC and whether Customs' decisionmakers considered this document. For instance, Plaintiff may inquire as to whether Dolores Beitl is the author of the handbook at issue, or was perhaps a person at Customs who regularly worked with this handbook.

or indirectly considered any guidelines, directives, or manuals, those materials should be included in the record.").  Only upon a showing of the latter will the Court order these materials submitted into the administrative record.


**b**


**Plaintiff May Conduct Limited Discovery Concerning
the Reference to "Blaine" on AR Doc. No. 9.**


On page 11 of its Discovery Motion, Plaintiff notes the following as documents in the administrative record that "are not adequately identified and/or contain notations that require explanation":

8)      AR Doc. No. 9, a facsimile cover sheet with attachments (dated January 2, 1996), which contains the notations:  "How about stating mileage at fill-up . . . mileage at reentry?"; "How is this affected by NAFTA?"; and "Nonsense, how about Blane?";

9)      AR Doc. No. 31, a handwritten memorandum dated December 23, 1996, which contains the notations "Dolores Beitl" and "handbook FLETC"; and

10)      AR Doc. No. 39, handwritten notes dated February 6, 1997, which contains no identification as to who wrote the notes or who, other than Commissioner Weise, attended the referenced meeting for Customs.


Regarding AR Doc. No. 9, neither the "stating mileage at fill-up" nor the "affected by NAFTA" notation leads the Court to believe that the administrative record is either incomplete or requires clarification at this time.  On their face, these two comments simply suggest two issues that may have been considered by Customs' decisionmakers in deciding HQ 227385; they do not suggest the existence of any specific materials that were considered by Customs' decisionmakers, but not included in the administrative record.  Further, these notations do not refer to "technical

terms" that require clarification or explanation.  Rather, these notations refer to considerations

that appear rather clear on their face (i.e., the Court does not need guidance as to the meaning of

"NAFTA" or what it means to state a vehicle's mileage at fill-up).  Accordingly, the Court finds

that Plaintiff has failed to meet its burden of demonstrating that discovery is necessary

concerning these notations.

Turning to the notation "Nonsense, how about Blaine?," however, the Court believes that

limited discovery is appropriate.  AR Doc. No. 9 is a facsimile transmission to OR&R which,

inter alia, lists various reasons why Customs should allow the sale of duty-free gasoline.  On

page 4 of this document, one of these considerations reads as follows:

> Automobiles have no incentive to reimport fuel, as cost of toll and Customs (U.S.
> & Canada) regulations deter reimportation (There is no reason to conclude cost
> savings would attract otherwise uninterested customers).

AR Doc. No. 9 at 4.  Apparently taking exception to this point, someone at Customs appears to

have circled this paragraph and written the notation "[n]onsense how about Blaine?"  See id.  No

further identification of who or what Blaine is, however, or how it affects the issue of

reimportation, appears in this memorandum.

Because this brief notation indicates that Customs' decisionmakers relied on "Blaine"

(who or whatever that may be) in rejecting Ammex's request to sell duty-free gasoline, and

because the issue to which this comment refers (the cost of reimportation) appears to be directly

related to Customs' decisions in HQ 227385 and HQ 225287, the Court finds that Plaintiff may

conduct limited, written discovery on this issue.  Specifically, Plaintiff may conduct discovery

for the limited purposes of (a) explaining or clarifying who or what "Blaine" is, and (b)

determining whether this reference to Blaine refers to one or more factors that were considered by Customs' decisionmakers in deciding HQ 227385. Armco, 13 CIT at 388-89, 712 F. Supp. at 216. Upon completion and review of such discovery, the Court will decide whether the information obtained by Plaintiff should be added to complete or explain the administrative record that now exists.

As for the notations "Dolores Beitl" and "handbook FLETC" which appear on AR Doc. No. 31 (item # 9), the Court notes that in Section III(B)(2)(a)(iii) above, limited discovery was allowed on the issue of what the "handbook FLETC" is and whether it was considered by Customs' decisionmakers. Accordingly, this issue need not be addressed further.

Finally, the Court denies Plaintiff's request to conduct discovery concerning AR Doc. No. 39 (item # 10), handwritten notes from a meeting dated February 6, 1997. The failure of Customs to identify the author of these notes and indicate who, other than Commissioner Weise, attended the referenced meeting neither indicates the existence of other evidence that was considered by Customs, nor does it indicate the existence of technical terms which require clarification in order for the Court to conduct a proper review. Rather, such omissions simply present questions concerning a piece of record evidence which, at this point, appears to be irrelevant to the question of whether Customs' determination in HQ 227385 was "arbitrary, capricious, and abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (1994). Accordingly, Plaintiff's request to conduct discovery on these questions does not fall within any of the well-recognized exceptions for completing or supplementing an administrative record.

**c**

**Plaintiff Has Not Provided a Reasonable Basis to Believe That the Record
Is Devoid Of Materials That Were Made by the Agency Decisionmakers.**

Beyond its request to supplement the record with, or conduct discovery concerning, the documents identified above, Plaintiff further states that "[i]t seems that no effort was made to include any documentation or records from the individuals at Customs involved in the process of making the decision at issue in this case." Discovery Motion at 11. According to Plaintiff, numerous documents already in the record evidence the fact that at least 14 named individuals at Customs Headquarters "directly participated in the consideration of the duty-free gasoline sales issue." Id. at 12. For this reason, Plaintiff seeks discovery concerning "any files, notes, memoranda or other materials created or held by" these individuals. Id. at 11. In addition, Plaintiff also notes its belief that "no effort was made to include any files, notes, memoranda or other materials from Customs Detroit . . . or from the regional Customs office in Chicago . . . ." Id. at 12.

As discussed previously, the administrative record for review does not consist of every relevant document that, in a broad sense, was before the agency. Rather, to be complete, the administrative record need only consist of those documents that, directly or indirectly, were considered by the agency's decisionmakers. Accordingly, in order to determine whether this part of Plaintiff's Discovery Motion has merit, it is necessary to decide who constituted the relevant decisionmakers for HQ 227385. Cf. Exxon Corp., 91 F.R.D. at 37 ("[T]he focus of inquiry into record definition is how the agency actually functions in its decision-making, not the labels attached to the stages of its decisional processes.")

To answer this question, the Court first looks to the relevant regulations governing Customs headquarter rulings, 19 CFR § 177.1 et sq. (1999). According to 19 CFR § 177.1(d)(1) (1999), a "ruling," such as HQ 227385, is defined as "a written statement issued by the Headquarters Office or the appropriate office of Customs as provided in this part that interprets and applies the provisions of the Customs and related laws to a specific set of facts." In turn, the regulations further provide that the term "Headquarters Office" "means the Office of Regulations and Rulings at Headquarters, United States Customs Service, Washington, D.C." 19 CFR § 177.1(d)(6) (1999). Accordingly, the relevant regulations governing headquarters rulings indicate that, in a typical situation, OR&R will be the relevant decisionmaker.

It appears that the presumption that OR&R is the relevant decisionmaker holds true in this case. As the Durant Declaration makes clear, and as verified by Defendant during oral argument, it is OR&R that is generally responsible for formulating positions and drafting responses to requests for Customs headquarters rulings, and it was four specific individuals within OR&R that were responsible for HQ 227385: (1) John Durant himself; (2) William Rosoff, Chief, Duty and Refund Determination Branch; (3) Paul Hegland, Attorney-Advisor; and (4) Caridad Berdut, Attorney-Advisor. See Durant Declaration at ¶¶ 2, 6. In the face of this evidence, Plaintiff must provide the Court with a strong showing that other officials at Customs may have been involved in deciding HQ 227358 before the Court will grant it discovery concerning the "files, notes, memoranda or other materials" of such individuals. This Plaintiff has failed to do.

In its Discovery Motion, Plaintiff makes numerous references to record materials which, the Court presumes, are meant to show that the various officials listed on pages 11 and 12 of its Discovery Motion were "involved in the process of making the decision at issue in this case."

Discovery Motion at 11.  The Court has reviewed these citations and finds that, in every instance, nothing identified by Plaintiff provides the Court with a reasonable basis to believe that anyone besides the named OR&R officials constituted the relevant decisionmakers for HQ 227385.

Many of the documents identified by Plaintiff are memoranda stating the position of a particular branch of Customs concerning the sale of duty-free gasoline.  See AR Doc. No. 7 (opinion opposing sale of duty-free gasoline from Anne K. Lombardi, Director, Office of Cargo Facilitation and Facilitation), No. 12 (opinion opposing sale of duty-free gasoline from Thomas P. Banner, Director, Cargo Control and Entry), No. 28 (opinion of Elizabeth B. Anderson, Chief Counsel, agreeing with HQ 225287); and No. 50 (opinion of Elizabeth B. Anderson, Chief Counsel, that the new arguments raised by Ammex does not compel a reversal of the agency's decision).  While these opinions apparently were considered by the OR&R decisionmakers and, appropriately, included in the record, these memoranda do not indicate that the officials involved synthesized the relevant record documents for HQ 227358, formulated Customs' institutional position on this issue,[10] drafted any part of this Headquarters Ruling, or otherwise acted as an agency decisionmaker.   Rather, on their face, these documents simply demonstrate the opinions of various Customs officials outside of OR&R on the issue of duty-free gasoline sales; opinions which, since they were included in the record, were apparently considered by the four OR&R officials.  Similarly, though other documents identified by Plaintiff show that particular Customs officials were involved with the issue of duty-free gasoline sales generally, see AR Doc. Nos. 3, 5, 21, 33, 47 and 49, they do not demonstrate that these officials were the actual decisionmakers

---

[10]   19 CFR § 177.9(a) (1999) provides that "[a] ruling letter issued by the Customs Service . . . represents the official position of the Customs Service with respect to the particular transaction or issue described therein and is binding on all Customs Service personnel . . . ."  Similarly, 19 CFR § 177.11(b)(6) (1999) provides that "[a]dvice furnished by the Headquarters Office in response to a request [from a field office] therefor represents the official position of the Customs Service as to the application of the Customs laws to the facts of a specific transaction."

for HQ 227358.[11]

Plaintiff's has failed to show that anyone other than the four OR&R officials were the relevant "decisionmakers" for HQ 227385. For this reason, supplementation of the record with additional memoranda or notes from other Customs officials would place before the Court more information than was before the actual decisionmakers. Such an expansion of the administrative record would create a different administrative record than that actually reviewed by the OR&R officials: a result which could invite the Court to substitute its judgment for that of the agency decisionmakers. See San Luis Obispo Mothers For Peace v. Nuclear Regulatory Commission, 751 F.2d 1287, 1325 (D.C. Cir. 1984), vacated in part on other grounds on reh'g en banc, 760 F.2d 1320 (1985), aff'd, 789 F.2d 26 (1986) ("Were courts cavalierly to supplement the record, they would be tempted to second-guess agency decisions in the belief that they were better informed than the administrators empowered by Congress and appointed by the President."); Asarco, 616 F.2d at 1161 (finding that the trial court "substitute[d] its judgment for that of the agency" in considering expert testimony that was not before the agency decisionmakers). Since such a result would "eviscerat[e] the notion that court review should be limited and not blossom

---

[11]  For instance, Plaintiff cites AR Doc. No. 33 as evidence that former Customs Commissioner George Weise was involved in deciding HQ 227385. Discovery Motion at 11-12. A review of this document, however, reveals no such thing. AR Doc. No. 33 is a letter from Commissioner Weise to former Michigan Governor James J. Blanchard, of the law firm Verner, Liipfert, Bernhard, McPherson and Hand, thanking him for his November 25, 1996, letter on behalf of Ammex. In this letter (AR Doc. No. 33), Commissioner Weise restates the conclusion of Customs' 1994 Headquarters Ruling on the issue of duty-free gasoline sales (HQ 225287) and makes clear that this ruling came from OR&R. Similarly, Commissioner Weise alludes to the fact that "[y]our client has petitioned [OR&R] for reconsideration of this ruling" and "[y]ou [Governor Blanchard] note that you met with Mr. John Durant of [OR&R] about this matter and that, with his agreement, you intend to submit additional materials regarding the matter." Read in context, these and other comments indicate that, in replying to Governor Blanchard's letter, Commissioner Weiss was acting as no more than a liaison of Customs' (OR&R's) position concerning duty-free gasoline sales.

into a De novo trial," <u>Tenneco Oil</u>, 475 F. Supp. at 316, and would turn "[t]he accepted deference of court to agency . . . on its head," <u>San Luis Obispo</u>, 751 F. 2d at 1325, the Court denies Plaintiff's request for discovery, at least in so far as it pertains to materials from individuals other than John Durant, William Rosoff, Paul Hegland and Caridad Berdut.

Besides requesting "any files, notes, memoranda or other materials" from individuals outside the four OR&R decisionmakers, however, Plaintiff has also requested discovery of the same materials from these four individuals. <u>See</u> Discovery Motion at 12. If the record was currently devoid of such documents, or if Plaintiff could provide the Court with a reasonable basis to believe that certain internal memoranda considered by these OR&R officials were not included in the record, this could constitute a reasonable request. <u>See</u> <u>Tenneco Oil</u>, 475 F. Supp. at 317 ("It strains the Court's imagination to assume that the administrative decision-makers reached their conclusions without reference to a variety of internal memoranda, guidelines, directives, and manuals . . . ."); <u>cf.</u> <u>Arizona Rehabilitation Hospital v. Shalala</u>, 185 F.R.D. 263 (D. Arizona 1998) (recognizing that the government may invoke both the deliberative process privilege and attorney-client privilege to keep certain documents out of the administrative record).

In this case, however, the record does contain various internal memoranda from the OR&R decisionmakers, <u>see, e.g.,</u> AR Doc. Nos. 24, 31, 36, and 48, and Plaintiff has not provided the Court with any independent reason to believe that any other materials that were prepared and considered by these decisionmakers are not currently in the record. Coupling these facts with the declaration by John Durant that "the agency record includes every document in OR&R file '227385', as well as '225287,'" Durant Declaration at ¶ 5, the Court again finds that Plaintiff has failed to present the Court with a reasonable basis to believe that the administrative record is incomplete, and denies discovery accordingly.

**d**

**In Light of Customs' No Note-taking Policy, the Absence of Notes or
Memoranda from Meetings Customs Held with Ammex Representatives Does Not
Provide a Reasonable Basis to Believe That the Record Is Incomplete.**

Finally, on page 13 of its Discovery Motion, Plaintiff argues that the record is incomplete

because

> Ammex is aware of certain meetings that took place between representatives of
> Ammex and Customs personnel including a February 21, 1996, meeting with
> William Rosoff and Paul Hegland, a November 15, 1996 meeting with John
> Durant and the July 17, 1997 meeting with Deputy Commissioner Samuel Banks
> and others.  The defendant has failed to place into the administrative record any
> notes or memoranda referencing these meetings.

Discovery Motion at 13.

On its face, this absence of notes or memoranda appears rather surprising.  Particularly in

regard to meetings attended by OR&R decisionmakers (Rosoff, Hegland, and possibly others),

one would assume both that such records exists and that they were relied upon in deciding HQ

227385.  At oral argument on June 3, 1999, however, defense counsel represented to the Court

that, in fact, no such records exist, since it is Customs' policy not to take notes or otherwise

memorialize such meetings.  According to defense counsel, although this is not a written policy,

Customs' position on memorializing meetings arises from its interpretation of 19 CFR § 177.4

(1999) ("Oral discussion of issues"), which, in relevant part, provides as follows:

> Conferences are scheduled for the purpose of affording the parties an opportunity
> to freely and openly discuss the matters set forth in the ruling request.
> Accordingly, the parties will not be bound by any argument or position advocated

or agreed to, expressly or by implication, during the conference unless either party subsequently agrees to be so bound in writing. The conference will not conclude with the issuance of a ruling letter.

19 CFR § 177.4(a) (1999).

In any case, the Court finds that Plaintiff has failed to impeach the Durant Declaration and provide the Court with a reasonable basis to believe that the administrative record is incomplete without such notes or memoranda. The Court finds Defendant's explanation sufficient to explain either why such notes and memoranda do not exist, or, if they do exist, why the OR&R decisionmakers did not rely on them in deciding HQ 227385.[12] Accordingly, the Court denies Plaintiff's request to file written interrogatories and take depositions concerning any notes or memoranda that may exist of meetings between representatives of Ammex and Customs officials.

_____

[12] In F. Lli De Cecco Di Filippo Fara San Martino S.P.A. v. United States, 980 F. Supp. 485 (CIT 1997), this Court ruled that plaintiff's could complete the administrative record with affidavits describing two conversation that were held with senior-level staff officials at the Department of Commerce. Though superficially similar to the facts at bar, this case is, in fact, distinguishable based on the relevant statutory provisions. In F. Lli De Cecco, Commerce was under a statutory obligation (19 U.S.C. § 1677f(a)(3)) to maintain a record of all ex parte meetings between (1) interested parties or other people providing factual information and (2) either the Commerce official charged with making the final antidumping determination or the Commerce officials charged with making a final recommendation to that person. See F. Lli De Cecco, 980 F. Supp. at 487. Because of both this statutory obligation and the fact that Commerce had already placed other summaries of similar ex parte communications in the record, the Court viewed the absence of notes or memoranda memorializing conversations with the interested parties as an adequate demonstration that the record was incomplete without the affidavits. See id. at 489.

As discussed above, in the case at bar Customs did not have a similar statutory duty to memorialize meetings and, apparently, even has an unwritten policy against doing so. In light of this fact, and unlike the situation in F. Lli De Cecco, the absence of such notes or memoranda from the administrative record does not, without more, provide the Court with a reasonable basis to believe that the administrative record is currently incomplete.

**3**

### Plaintiff Has Not Made a Strong Showing That Customs
### Engaged in Improper Institutional Behavior.

As discussed above, in <u>Overton Park</u> the Supreme Court made clear that, where an administrative agency has promulgated a finding which make clear the grounds for its decision, a reviewing court will normally avoid inquiring into the mental processes of administrative decisionmakers.  <u>See</u> <u>Overton Park</u>, 401 U.S. at 420.  Only when a party is able to make a strong showing of either bad faith or improper behavior should courts allow it to go behind the stated rationale of agency decisionmakers, to conduct discovery concerning what may have been the "real" motives or considerations that lead the decisionmakers to a particular conclusion.  <u>See</u> <u>id.</u>;[13] <u>see also</u> <u>Saha Thai Steel Pipe Co.</u>, 11 CIT at 260-61, 661 F. Supp. at 1202  (quoting <u>Friends of the Shawangunks, Inc. v. Watt</u>, 97 F.R.D. 663, 667-68 (N.D.N.Y. 1983)) (recognizing that a presumption of good faith applies in all administrative action, and that "the party moving to compel discovery 'must show specific facts to indicate that the challenged action was reached because of improper motives'" in order to overcome this presumption).

On pages 14 - 17 of its Discovery Motion, as well as pages 11-13 of its Reply, Plaintiff argues that such discovery concerning the mental processes of various Customs officials is

---

[13]  During oral argument, Plaintiff's counsel indicated that this Court should look to <u>NEC Corp. v. United States Dep't of Commerce</u>, 958 F. Supp. 624 (CIT 1997) in reviewing its Discovery Motion.  <u>NEC Corp.</u>, however, is distinguishable.  In <u>NEC Corp.</u>, the Court ruled that, in order to obtain discovery concerning certain administrative officials, the plaintiff did not need to make a strong showing of bad faith or improper behavior by Commerce officials.  <u>NEC Corp.</u>, 958 F. Supp. at 632-33.  This ruling, however, was made in regard to a claim of prejudgment on the part of the Department of Commerce.  Because of the nature of this cause of action, and unlike the case at bar, there was no administrative record or formal administrative findings to limit the scope of the Court's review.  <u>See</u> <u>id.</u> at 632.  Rather, because of the nature of its claim, the plaintiff was entitled to broad discovery under USCIT R. 26.  <u>Id.</u> at 633 & n.6.

appropriate in this case,[14] in light of the allegedly improper institutional behavior exhibited by these officials.  Specifically, Plaintiff alleges that Customs' decisionmakers (1) weighed improper considerations in deciding not to allow Ammex to sell duty-free gasoline, (2) failed to memorialize meetings between Ammex and Customs personnel, and (3) failed to make a neutral referral, as promised, to the Office of Chief Counsel.  See Reply at 12.

Addressing Plaintiff's charge that Customs weighed improper considerations in deciding HQ 227385, the Court finds that Plaintiff has failed to make the requisite strong showing that would justify discovery outside the administrative record.  In support of its claim, Plaintiff cites to the following:

- the statement in AR Doc. No. 24, a handwritten memorandum from William Rosoff to Paul Hegland, that "we probably can get opposition to support our prior position.  Any meeting will need to have OFO present.  As I recall OFO had an operational concern.";

- the statement in AR Doc. No. 33, a letter from then Commissioner Weise to former Michigan Governor James J. Blanchard, of the law firm Verner, Liipfert, Bernhard, McPherson and Hand, that "your client may wish to seek specific legislation to enable it to sell gasoline at its duty-free store facility.  Doing so would permit a fair and open discussion of the impact upon affected communities of allowing such sales.";

- the statement in AR Doc. No. 34, an unsigned memorandum in response to specific points raised by former Governor Blanchard, that "[s]tate tax issues were not controlling in the ruling.";

- a letter dated September 3, 1997, from the Michigan Truck Stop Operators Association encouraging its members to register objections to the sale of duty-free gasoline by

---

[14]  Specifically, Plaintiff seeks permission to file requests for admissions, file requests for written interrogatories, and conduct depositions of certain Customs officials in order to determine "whether non-statutory, irrelevant or extraneous considerations, or improper contacts with non-federal parties were involved in Customs' decision to deny Ammex permission to sell duty-free gasoline."  Discovery Motion at 18.

submitting letters to an official at Customs Detroit; and

•        a memorandum from the Director, Cargo Control and Entry to the Chief, Entry and
         Carrier Ruling Branch (AR Doc. No. 12), which notes that Canadian Customs was
         dealing with the same issue and had decided not to permit duty-free sales of gasoline.

Discovery Motion at 15-17.

Simply put, none of this evidence creates a strong showing that improper considerations were weighed in deciding HQ 227385.  For example, while the statement "[s]tate tax issues were not controlling in the ruling" could imply that state tax issues were considered in deciding HQ 227385, another, just as likely, implication is that state tax issues were not at all considered in deciding HQ 227385.  In fact, given the absence of any discussion of state tax issues in HQ 227385, this would seem to be the more likely case.  Likewise, a review of AR Doc. No. 33 reveals that Commissioner Weise's reference to "affected communities" is likely just an acknowledgment of the fact that, in considering legislation, many affected individuals and organization can get their positions heard.  Regardless of whether this actually was Commissioner Weise's point, however, nothing in this statement shows, or even implies, that the opposition of some particular communities or organizations was taken into account by Commissioner Weise (let alone the Customs' decisionmakers) in deciding either HQ 227385 or HQ 225287.[15]

As for the remaining evidence cited by Plaintiff, the Court finds that, at best, this

---

[15]     The Court further notes that Commissioner Weise makes this reference only <u>after</u> discussing the fact that OR&R had previously (in HQ 225287) rejected Ammex's request to sell duty-free gasoline; a fact which implies that Customs' legal determination was independent from Commissioner Weise's suggestion concerning "specific legislation" and his related reference to "affected communities."

evidence shows that Customs' decisionmakers may have been aware of the views of outside

parties, or the manner in which Customs Canada had handled a similar request, when they

decided HQ 227358. The fact that these decisionmakers were aware of such views or

information, however, does not necessarily lead to a presumption that improper contacts took

place,[16] or that improper considerations influenced the outcome of HQ 227385. This is

particularly true in light of the "presumption of good faith" that applies to Customs'

decisionmakers. See Spezzaferro v. FAA, 807 F.2d 169, 173 (Fed. Cir. 1986) ("Unsubstantiated

suspicions and allegations are not enough [to overcome the presumption that government

officials carry out their duties in good faith].") For instance, while the September 3, 1997, letter

from the Michigan Truck Stop Owners Association provides evidence that members of this

organization may have submitted their views concerning duty-free gasoline sales to Customs

Detroit, this letter does not provide credible evidence that these letters (should they exist) were

passed on to Customs Headquarters and, in turn, improperly influenced the deliberations of the

OR&R decisionmakers. Similarly, while William Rosoff's comments in AR Doc. No. 24

---

[16] In referring the Court to William Rosoff's comments in AR Doc. No. 24, the letter from the Michigan Truck Stop Owners Association, and the discussion in AR Doc. No. 12 of how Canadian Customs had dealt with duty-free gasoline sales, Plaintiff seems to imply that contact occurred between U.S. Customs and these and other bodies and that such contact was improper. Even assuming that this evidence did provide a reasonable basis to believe that such contact took place (which, in the case of the Michigan Truck Stop Owners Association and Customs Canada, it does not), Plaintiff has failed to demonstrate that such ex parte contact is improper or that, as a result of such contact, there is a strong reason to believe that Customs' decisionmakers weighed improper considerations in deciding HQ 227385. By all appearances, HQ 227385 constitutes an exercise of "informal" rulemaking under the Administrative Procedure Act and, as such, is not subject to the prohibition on ex parte communications set forth in 5 U.S.C. § 557 (d)(1) (1994). See Sierra Club v. Costle, 657 F. 2d 298, 400-04 (D.C. Cir. 1981) (finding no prohibition on ex parte proceedings for informal rulemaking). Accordingly, even assuming that certain ex parte communications took place, this fact alone, without further evidence of impropriety, is insufficient to justify Plaintiff's discovery request. See Town of Orangetown v. Ruckelshaus, 740 F.2d 185, 188 (2nd Cir. 1984) (denying a claim of improper political influence where, despite ex parte contact with non-agency officials, there was no indication that the agency was improperly influenced to consider extraneous matters).

certainly show that he was concerned about getting certain opposition to support "our prior position," nothing in this statement indicates that this concern lead Rosoff or any other OR&R decisionmaker to weigh improper, non-statutory considerations.

Notwithstanding this failure to make a strong showing of improper behavior, however, one piece of record evidence identified by Plaintiff does raise a question concerning the completeness of the record. Specifically, while the references in AR Doc. No. 24 to the positions of "opposition" and "OFO" do not put at issue the propriety of the decisionmakers' actions, these references do provide a reasonable basis to believe that these positions were at least considered by Customs' decisionmakers. As noted above, William Rosoff's comments in AR Doc. No. 24 make clear that he was concerned about getting certain opposition to support "our prior position." Who this opposition is, however, and whether (or where) its position is reflected in the record, is not clear. Likewise, while Rosoff's references to "OFO" create a strong presumption that the position of "OFO" was considered in the decisionmaking process, it is unclear who or what "OFO" is and whether the record currently reflects its "operational concern." Presumably, "OFO" is a part of Customs whose position, per the Durant Declaration, is already reflected in the record. Whether this is true, however, merits definitive clarification, since "OFO" appears to have affected the decisionmaking process. Accordingly, Plaintiff may conduct limited, written discovery to determine (a) who or what constitutes the "opposition" and "OFO" referred to in AR Doc. No. 24; (b) whether Customs' decisionmakers considered the positions of "opposition" or "OFO" in deciding HQ 227385; and (c) whether any evidence of such consideration is already a part of the administrative record.

Turning to the last two ways in which Plaintiff alleges that Customs acted improperly, Customs' failure to memorialize meetings between Ammex and Customs personnel and OR&R's

alleged failure to make a neutral referral to the Office of Chief Counsel, the Court finds these claims to have no merit. As discussed previously, defense counsel has represented to the Court that, in meeting with a party to discuss the issues involved in its ruling request, it is Custom's policy not to memorialize what was said. In light of this policy, the Court does not find the absence of notes or memoranda concerning the meetings between Customs and Ammex officials to be evidence that Defendant acted improperly or in bad faith in not memorializing these meetings.

Likewise, nothing in the referral to the Office of Chief Counsel supports Plaintiff's claim that this was "a partisan request to the Chief Counsel's Office to provide an opinion to support the position previously taken by Customs regardless of any new information that had been presented." Discovery Motion at 17. In asking the Office of Chief Counsel whether its prior opposition to the sale of duty-free gasoline had changed in light of Ammex's new arguments, OR&R provided the Office of Chief Counsel with its own opinion on this issue. See AR Doc. 49 ("Our position is that the 1996 Act does not change the legal correctness of our holding in HQ 225287."). While, arguably, doing this may have kept the Office of Chief Counsel's opinion from being made on an entirely clean slate, the Court does not find that this action, without more, was an attempt to influence the Chief Counsel's Office to arrive at a particular decision. Rather, on its face, this document simply indicates that OR&R had taken a preliminary position on whether the 1996 Act changed the legal correctness of HQ 225287 and wanted to know whether the Office of Chief Counsel agreed with its opinion. Such a request appears perfectly appropriate and, contrary to Plaintiff's claim, does not constitute evidence of improper behavior by Customs officials.

In short, the evidence identified by Plaintiff fails to make a strong showing that the

relevant decisionmakers for HQ 227385 weighed improper considerations, had improper

contacts, or otherwise acted improperly or in bad faith in rendering their decision.  While the

Court is sensitive to the problems parties face in gathering such evidence, since it "is seldom

highlighted on dog-earred pages of the administrative record," Plaintiff's proof must draw its

strength from something more than mere speculation.  Saha Thai Steel Pipe Co., 11 CIT at 260-

61, 661 F. Supp. at 1202.  Because Plaintiff's evidence fails to do this, the Court denies Plaintiff's

request to conduct discovery into the mental processes of the four OR&R decisionmakers and

other Customs officials.[17]


**IV**

**CONCLUSION**


Through its Discovery Motion, Plaintiff essentially seeks broad discovery concerning

Customs' decision-making process for HQ 227385.  If discovery in this case were governed by

USCIT Rs. 26-37 or their Federal equivalents, Fed. Rs. Civ. P. 26-37, such a broad inquiry would

largely be appropriate, since USCIT R. 26(b)(1) allows parties to "obtain discovery regarding any

matter, not privileged, which is relevant to the subject matter involved in the pending action."

---

[17] During oral argument, Plaintiff identified the statement "[w]hen Governor Blanchard follows up (if he does), closure of case should be simple . . . after considerations of his argument, our position remains unchanged," in AR Doc. No. 44, as an example of improper behavior (prejudgment) by Customs.  Also during oral argument, Plaintiff argued that discovery was appropriate concerning certain technical issues, including "what are unidentifiable fungibles," how the flow of goods in a duty-free store is controlled, and why Customs disregarded Ammex's offer for a method to control "the ins and out of the gasoline."  None of these asserted bases for discovery, however, were discussed by Plaintiff anywhere in either its Discovery Motion or its Reply.  Because these issues were raised for the first time during oral argument (and only in passing), the Court does not consider these grounds for discovery to have been properly raised and does not address them in this opinion.

In this case, however, these general rules for discovery do not apply, since the Court's review is limited to the record that was before the administrative decisionmakers. See Florida Power & Light Co. v. Lorion, 470 U.S. 729, 744 (1985) ("The factfinding capacity of the district court is thus typically unnecessary to judicial review of agency decisionmaking."); Exxon Corp., 91 F.R.D. at 33 ("Matters not considered by the agency . . . are legally irrelevant, and therefore are not discoverable under Fed. R. Civ. P. 26."). In light of this limitation on the evidence that the Court may consider, Overton Park and its progeny have made clear that unless a party can provide the Court with a reasonable factual basis to believe that the record as filed is incomplete, that the agency exhibited bad faith or improper behavior, or that one of the other limited exceptions to the general prohibition on discovery is applicable, discovery outside the certified administrative record will not be allowed.

In its Discovery Motion, Plaintiff identifies for the Court various evidence which, it claims, shows both that certain materials should be added to the administrative record and that it should be allowed to conduct various forms of discovery. As discussed above, a review of this evidence reveals that, with some exceptions, these materials simply provide the Court with no substantive foundation for allowing Plaintiff to go beyond the administrative record that now exists. Rather, and at best, this evidence simply indicates the possibility that Customs' decisionmakers considered certain documents, or weighed improper considerations, in deciding HQ 227385. Such speculation is not a sufficient grounds for discovery beyond the administrative record. See James Madison Ltd. v. Ludwig, 82 F.3d 1085, 1095 (D.C. Cir. 1996) (unsupported by other evidence, conclusory allegations "fall far short of the 'strong showing' of bad faith required to justify supplementing the record").

Notwithstanding Plaintiff's general failure to demonstrate that discovery or

supplementation of the record is appropriate at this time, the Court does note that this opinion is

not dispositive as to whether discovery may be appropriate in the future.  As this case proceeds,

if the Court discovers that effective judicial review is frustrated by Customs' failure to adequately

explain its rationale,[18] or that effective review is not possible without clarification of certain

terms in the record, limited discovery may be necessary.  Similarly, should the Court or the

parties discover evidence which reasonably indicates that the record is incomplete, or that

Customs' decisionmakers acted improperly, additional discovery may also be proper.  See Miami

Nation of Indians, 979 F. Supp. at 780 (noting that "[i]f such concerns arise after review of the

record as shaped by this order, the court will entertain a renewed request [for discovery]").  At

this time, however, Plaintiff has failed to identify any evidence, record or otherwise, that would

justify the broad discovery or supplementation of the record which it seeks.


_____

Evan J. Wallach, Judge



Date:   August  13, 1999
         New York, New York


_____

   [18]   The Court notes, however, that in such circumstances the appropriate remedy may not
be discovery, but a remand to the administrative agency so that it may more fully articulate the
rationale underlying its decision.  See Camp, 411 U.S. at 142-43 (noting that, although affidavits
or testimony from decisionmakers may be necessary where there is a failure to adequately
explain agency action, remand is the appropriate remedy where the agency's explanation, though
clear, is not sustainable on the administrative record); see also Gechter v. Davidson, 116 F.3d
1454 (Fed. Cir. 1997) (remanding administrative decision where the agency's findings of fact and
conclusions of law failed to provide an adequate basis for review); Public Power Council, 674
F.2d at 794 (9th Cir. 1982) ("When there is a need to supplement the record to explain agency
action, the preferred procedure is to remand to the agency for its amplification.")

ERRATA

<u>Ammex, Inc. v. United States</u>, Court No. 99-01-00013, Slip Op. 99-81, dated August 13, 1999

Page 19, footnote 9, line 3, delete the name "Delores Butt" and substitute the name "Delores Beitl"

Page 20, line 12, delete the name "Blane" in the sentence "'Nonsense, how about Blane?'" and substitute the name "Blaine"

In the following sentences, "HQ 227385" should be substituted for "HQ 227358":

    Page 24, line 18:  "may have been involved in deciding HQ 227358"
    Page 25, line 13:  "synthesized the relevant record documents for HQ 227358"
    Page 26, line 1:    "for HQ 227358"
    Page 33, line 3:    "decided HQ227358"

Page 26, footnote 11, line 13, delete the name "Commissioner Weiss" and substitute the name "Commissioner Weise"

Page 27, line 1, delete the phrase "De novo" and substitute the phrase "<u>de novo</u>"

Page 29, footnote 12, lines 2-3, delete the phrase "this Court ruled that plaintiff's could complete the administrative record with affidavits describing two conversation" and substitute the phrase "this Court ruled that plaintiffs could complete the administrative record with affidavits describing two conversations"

ERRATA

<u>Ammex, Inc. v. United States</u>, Court No. 99-01-00013, Slip Op. 99-81, dated August 13, 1999


Page 25, line 10, delete the word "does" from the phrase "the new arguments raised by Ammex does not compel" and substitute the word "do"