**Slip Op. 03-40**

# UNITED STATES COURT OF INTERNATIONAL TRADE

CANDLE CORPORATION OF AMERICA
and BLYTH, INC.,

        Plaintiffs,

        v.

UNITED STATES INTERNATIONAL TRADE
COMMISSION, DEANNA TANNER OKUN,
Chairman, UNITED STATES CUSTOMS
SERVICE, and ROBERT C. BONNER,
Commissioner,

        Defendants,

        and

CANDLE-LITE DIVISION OF LANCASTER
COLONY CORPORATION, LUMI-LITE
CANDLE CO., and GENERAL WAX &
CANDLE CO.,

        Defendant-Intervenors,

BEFORE: Pogue, Judge

Court No. 02-00751

[Plaintiffs' motion for judgment on the agency record denied; judgment entered for defendants.]

Decided: April 8, 2003

Hale and Dorr LLP (David A. Wilson) for Plaintiffs Candle Corporation of America and Blyth, Inc.

Lyn M. Schlitt, General Counsel; James M. Lyons, Deputy General Counsel, Michael Diehl, Attorney Advisor, for Defendant U.S. International Trade Commission.

Robert D. McCallum, Jr., Assistant Attorney General, David M. Cohen, Director, Lucius B. Lau, Assistant Director, Paul D. Kovac, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Ellen C. Daly, Senior Attorney, Office of the Chief Counsel, United States Customs Service, Of Counsel, for Defendant United States.

Stewart and Stewart (Terence P. Stewart, Eric P. Salonen, Patrick J. McDonough, Dennis R. Nuxoll) for Defendant-Intervenors Candle-

Lite Division of Lancaster Colony Corporation, Lumi-Lite Candle Co., and General Wax & Candle Co.

Pepper Hamilton LLP (Gregory C. Dorris, Edward M. Andries) for Defendant-Intervenor Muench-Kreuzer Candle Company.


## OPINION

**POGUE, Judge:**  This matter is before the Court on the motion of Plaintiffs Candle Corporation of America and Blyth, Inc. (collectively "CCA" or "Plaintiffs") for judgment upon the agency record.  Plaintiffs seek reversal of the United States Customs Service's ("Customs") denial of Plaintiffs' application for certification for receipt of payments pursuant to the Continued Dumping and Subsidy Offset Act of 2000, 19 U.S.C. § 1675c ("CDSOA" or "Byrd Amendment").[1]  This Court exercises jurisdiction under 28 U.S.C. § 1581(i)(2000).  We deny Plaintiffs' motion and grant judgment for the defendants.


## Background

The Byrd Amendment provides for the annual distribution of the duties collected pursuant to antidumping and countervailing duty

---

[1] The Byrd Amendment has been challenged before the World Trade Organization.  See WTO Appellate Body Report on United States-Continued Dumping and Subsidy Offset Act of 2002, WT/DS217/AB/R and WT/DS234/20/AB/R (Jan. 16, 2003) http://www.wto.org/english/tratop_e/dispu_e/dispu_subjects_index_e.htm.

orders.[2]  The distribution, termed a "continued dumping and subsidy offset," is available to "affected domestic producers for qualifying expenditures."  19 U.S.C. § 1675c(a).  The purpose of the Byrd Amendment is to strengthen the remedial effects of the antidumping duties imposed on subject merchandise.  See Pub. L. 106-387, 114 Stat. 1549, 1549A-72-73, reprinted in 19 U.S.C.A. § 1675c ("United States trade laws should be strengthened to see that the remedial purpose of those laws is achieved."); Huaiyin Foreign Trade Corp. v. United States, slip op. 02-42 at 18-19 (Fed. Cir. Mar. 21, 2003) ("Far from rendering the antidumping statute penal in nature . . ., the Byrd Amendment actually enhances its remedial nature.  The duties now bear less resemblance to a fine payable to the government, and look more like compensation to victims of anticompetitive behaviors.").

The term "affected domestic producer" is defined in the Byrd Amendment as

> any manufacturer, producer, farmer, rancher, or worker representative (including associations of such persons) that—
> (A) was a petitioner or interested party in

---

[2] Under certain conditions, United States trade laws permit domestic manufacturers to petition the federal government for the initiation of an antidumping investigation.  See 19 U.S.C. § 1673a (2000).  "The terms 'dumped' or 'dumping' refer to the sale or likely sale of goods at less than fair value." 19 U.S.C. § 1677(34).  An antidumping investigation may result in the imposition of antidumping duties, pursuant to an antidumping order, on merchandise imported into the United States.  See 19 U.S.C. §§ 1673, 1673d(c)(1), 1673e(a).

> support of the petition with respect to which
> an antidumping duty order, a finding under the
> Antidumping Act of 1921, or a countervailing
> duty order has been entered, and
> (B) remains in operation.

19 U.S.C. § 1675c(b)(1).  The statute specifies, however, that

> Companies, businesses, or persons that have ceased the
> production of the product covered by the order or finding
> or who have been acquired by a company or business that
> is related to a company that opposed the investigation
> shall not be an affected domestic producer.

Id.

The Byrd Amendment requires the International Trade Commission ("ITC" or "Commission") to forward to the Commissioner of Customs "a list of petitioners and persons with respect to each [antidumping] order . . . that indicate support of the petition by letter or through questionnaire response."  19 U.S.C. § 1675c(d)(1); see also 19 C.F.R. § 159.61(b).[3]  Subsequently, Customs must publish a notice of intention to distribute the continued dumping and subsidy offset and the ITC list of the affected domestic producers potentially eligible to receive an offset distribution.  19 U.S.C. § 1675c(d)(2).  Customs also "request[s] a certification from each potentially eligible affected domestic producer," and determines whether to grant or deny

---

[3] In the course of an antidumping investigation, the ITC may issue questionnaires to domestic producers.  19 C.F.R. § 201.9; see also 19 C.F.R. § 207.11(b)(2) (requiring petitions to include specific information including "[i]dentification of each product on which the petitioner requests the Commission to seek pricing information in its questionnaires").

certification.[4]  19 U.S.C. § 1675c(d)(2)-(3); 19 C.F.R. § 159.63.

---

[4] The Byrd Amendment specifically provides as follows:

d) Parties eligible for distribution of antidumping and countervailing duties assessed

(1) List of affected domestic producers

The Commission shall forward to the Commissioner within 60 days after the effective date of this section in the case of orders or findings in effect on January 1, 1999, or thereafter, or in any other case, within 60 days after the date an antidumping or countervailing duty order or finding is issued, a list of petitioners and persons with respect to each order and finding and a list of persons that indicate support of the petition by letter or through questionnaire response. . . .

2) Publication of list; certification

The Commissioner shall publish in the Federal Register at least 30 days before the distribution of a continued dumping and subsidy offset, a notice of intention to distribute the offset and the list of affected domestic producers potentially eligible for the distribution based on the list obtained from the Commission under paragraph (1). The Commissioner shall request a certification from each potentially eligible affected domestic producer—
(A) that the producer desires to receive a distribution;
(B) that the producer is eligible to receive the distribution as an affected domestic producer; and
(C) the qualifying expenditures [as defined by 19 U.S.C. § 1675c(b)(4)] incurred by the producer since the issuance of the order or finding for which distribution under this section has not previously been made.

(3) Distribution of funds

The Commissioner shall distribute all funds (including all interest earned on the funds) from assessed duties received in the preceding fiscal year to affected domestic producers based on the certifications described in paragraph (2). The distributions shall be

Additionally, Customs is charged with determining whether "successor companies" that file applications for certification are eligible to receive distributions.  19 C.F.R. § 159.61(b)(1)(i).[5]

On Sept. 3, 1985, the National Candle Association filed a petition seeking an antidumping investigation of petroleum wax candles from the People's Republic of China. <u>Antidumping Petition, Petroleum Wax Candles from the People's Republic of China</u> (Sept. 3, 1985), Certified Admin. Rec. ("C.A.R.") Tab 1 ("Petition").  The investigation was initiated, and, in due course, an antidumping order was issued.  <u>Antidumping Duty Order: Petroleum Wax Candles From the People's Republic of China</u>, 51 Fed. Reg. 30,686 (Dep't Commerce Aug. 28, 1986).

On December 29, 2000, the ITC transmitted to Customs "a list

---

made on a pro rata basis based on new and remaining qualifying expenditures.

19 U.S.C. § 1675c(d).

[5] The parties to this action appear to agree that the proviso following the "remains in business" requirement can be read to authorize successor companies to qualify for distribution because it implies that companies that have been acquired by a company that supported the investigation may continue to qualify for distribution. <u>See</u> Pls.' Mem. Supp. Mot. J. Agency R. at 9 ("Pls.' Mem."); Def.'s Opp'n Pls.' Mot. J. Agency R. at 14-15 ("Def.'s Br."); Resp. of Def.-Ints. Candle-Lite Division of Lancaster Colony Corporation, Lumi-Lite Candle Co., and General Wax & Candle Co. to Pls.' Mot. J. Agency R. at 15; Def.-Int. Muench-Kreuzer's Br. Opp'n Pls.' Mot. J. Agency R. at 16-18; <u>see also</u> 19 U.S.C. § 1675c(b)(1) ("Companies, businesses, or persons that have ceased the production of the product covered by the order or finding or who have been acquired by a company or business that is related to a company that opposed the investigation shall not be an affected domestic producer.").

of petitioners and other entities that indicated public support of the petition." Letter from Stephen Koplan, U.S. International Trade Commission, to Stuart Seidel, Assistant Commissioner, U.S. Customs Service (Aug. 27, 2001), C.A.R. Tab 4 at 2. This ITC list subsequently appeared in Customs' notice of intent to distribute continued dumping and subsidy offsets, published in the Federal Register on August 3, 2001. Distribution of Continued Dumping and Subsidy Offset to Affected Domestic Producers, 66 Fed. Reg. 40,782, 40,784-99 (Dep't Treasury Aug. 3, 2001) (notice of intent to distribute offset); see also Letter from Douglas M. Browning, U.S. Customs Service, to Jay P. Urwitz, Hale and Dorr LLP (Jan. 18, 2002), C.A.R. Tab 6 at 2. Plaintiff Candle Corporation of America ("CCA") was not among the listed eligible firms, and on August 21, 2001, requested that it be added to the list. On August 27, 2001, in response to Plaintiffs' request, the ITC declined to add CCA to the ITC list because "the company did not indicate support of the petition in either of the questionnaires it submitted in the original investigation." Letter from Stephen Koplan, U.S. International Trade Commission, to Bonnie B. Byers, Hale and Dorr LLP (Aug. 27, 2001), C.A.R. Tab 4 at 1. The ITC did, however, add to its list two other U.S. candle producers, Colonial Candle of Cape Cod and Lenox Candles. Id., C.A.R. Tab 4 at 2-3. Both of these companies were acquired by CCA in asset purchase agreements. Letter from Jay P. Urwitz, Hale and Dorr LLP, to Douglas Browning,

U.S. Customs Service (Oct. 2, 2001), C.A.R. Tab 5 at Asset Purchase Agreements; see also id. at Certification at 2 para. 5 ("CCA acquired Lenox Candles ('Lenox') from Lenox Corporation on June 8, 1987. . . . CCA acquired Colonial Candle of Cape Cod ('Colonial Candle') from General Housewares Corp. on April 19, 1990."). Plaintiffs do not challenge the August 27, 2002 ITC decision. See Joint Stipulation of the Parties at 4 para. 3 (Dec. 17, 2002) ("Jt. Stip.").

On October 2, 2001, CCA filed an application for certification "in response to the Customs Service notice in the Federal Register concerning the Distribution of Continued Dumping and Subsidy Offset," seeking "distribution of continued antidumping duties on behalf of Lenox Candle and Colonial Candle of Cape Cod." Letter from Jay P. Urwitz, Hale and Dorr LLP, to Douglas Browning, U.S. Customs Service (Oct. 2, 2001), C.A.R. Tab 5 at 1; Distribution of Continued Dumping and Subsidy Offset to Affected Domestic Producers, 66 Fed. Reg. at 40,782. CCA claimed that it was eligible to receive CDSOA distributions as the "successor company" to Lenox and Colonial, "as provided in Section 159.61(b)(1)(i) of the regulations." Letter from Jay P. Urwitz, Hale and Dorr LLP, to Douglas Browning, U.S. Customs Service (Oct. 2, 2001), C.A.R. Tab 5 at 1.[6]

---

[6] On December 10, 2002, at oral argument, by telephone conference, on Plaintiffs' Motion for a Temporary Restraining Order in this action, Plaintiffs represented to the Court that

On January 18, 2002, Customs denied CCA's certification request with regard to eligibility for distributions for fiscal year 2001.  See Letter from Douglas M. Browning, U.S. Customs Service, to Jay P. Urwitz, Hale and Dorr LLP (Jan. 18, 2002), C.A.R. Tab 6.  Subsequently, Customs denied CCA's requests for reconsideration with regard to fiscal years 2001 and 2002.  See Letter from Douglas M. Browning, U.S. Customs Service, to Jay P. Urwitz, Hale and Dorr LLP (May 3, 2002), C.A.R. Tab 8; Letter from Michael T. Schmitz, U.S. Customs Service, to Jay P. Urwitz, Hale and Dorr LLP (Dec. 4, 2002), C.A.R. Tab 10.

Plaintiffs challenge these Customs decisions, asserting that CCA is entitled to collect CDSOA offset distributions as the successor company to Lenox and Colonial, Pls.' Mem. at 9-10, and alternatively that Lenox and Colonial are independently entitled to collect CDSOA distributions as "affected domestic producers" that "remain in operation."  19 U.S.C. § 1675c(a)-(b); Pls.' Reply Mem. Supp. Mot. J. Agency R. at 4-5 ("Pls.' Reply").

## Standard of Review

In cases arising under 28 U.S.C. § 1581(i), "the Court of International Trade shall review the matter as provided in section

---

Lenox and Colonial Candle were corporations that no longer exist. In briefing the instant motion, however, Plaintiffs argue that "Lenox and Colonial remain in operation."  Pls.' Mem. at 8. Plaintiffs' latter argument is not relevant to CCA's cause of action as it is pled here.  See infra Part III pp. 17-18.

706 of title 5." 28 U.S.C. § 2640(e). Title 5 U.S.C. § 706 provides that this Court shall, inter alia, "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (2000).

"The scope of review under the 'arbitrary and capricious' standard is narrow." Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983). Nevertheless, "arbitrary and capricious" review is not without force. Normally, an agency decision would be arbitrary and capricious

> if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

Id. The agency must "examine the relevant data and articulate a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made.'" Id. (quoting Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 168 (1962)).

In addition, Customs' determinations must be "in accordance with law." 5 U.S.C. § 706(2)(A). Title 5 U.S.C. § 706 "requires federal courts to set aside agency action that is 'not in accordance with law' . . . which means, of course, any law, and not merely those laws that the agency itself is charged with

administering." F.C.C. v. NextWave Personal Communications Inc., 123 S.Ct. 832, 838 (2003) (citing Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 413-14 (1971) ("In all cases agency action must be set aside if the action was 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law' or if the action failed to meet statutory, procedural, or constitutional requirements.").

As the agency decision challenged here does not have the force of law and did not issue after a hearing or an equivalent "relatively formal administrative procedure," we accord Customs' statutory interpretations only that respect earned by their persuasiveness. United States v. Mead Corp., 533 U.S. 218, 230 (2001).

## Discussion

### I. Support for the Petition

The Byrd Amendment establishes two threshold requirements that CCA must meet in order to be an "affected domestic producer" eligible for offset distributions. First, CCA must be "a petitioner or interested party in support of the petition with respect to which an antidumping duty order, a finding under the Antidumping Act of 1921, or a countervailing duty order has been entered." 19 U.S.C. § 1675c(b)(1)(A). Second, CCA must "remain[] in operation." 19 U.S.C. § 1675c(b)(1)(B).

The ITC determined that CCA did not meet the first requirement because "the company did not indicate support of the petition in either of the questionnaires it submitted in the original investigation." Letter from Stephen Koplan, U.S. International Trade Commission, to Bonnie B. Byers, Hale and Dorr LLP (Aug. 27, 2001), C.A.R. Tab 4 at 1.

The evidence in the record supports this determination. Question number nine on the ITC's questionnaire asked whether the responding company "support[ed] the petition in this investigation[.]" Producer's Questionnaire (Sept. 19, 1985), C.A.R. Tab 2 at 2. In its first questionnaire response, CCA did not check either the "Yes" or the "No" box provided as a form for answering this question. Id. However, in the space provided for comments concerning question nine, CCA stated that "[o]ur firm would favor legislation if dumping were proved. However, it should be noted that any added tariffs that may be imposed on either China or Brazil, [sic] would have a negative effect on our P & L." Id. In its second questionnaire response, CCA checked the "No" box in answering question nine, and also restated its prior comment.[7] Producer's Questionnaire (May 15, 1986), C.A.R. Tab 3 at 2.

_____

[7] The comment in the second questionnaire referred only to China. CCA stated that "[o]ur Firm would favor legislation if dumping were proved. However, it should be noted that any added tariffs that may be imposed on China would have a negative effect on our P & L." Producer's Questionnaire (May 15, 1986), C.A.R. Tab 3 at 2.

The comment included in CCA's first questionnaire response may reasonably be interpreted to indicate opposition to the petition. Therefore, the ITC's interpretation of the comment as failing to indicate support for the petition is not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. Furthermore, the second questionnaire clearly indicates that CCA did not support the petition. Accordingly, the ITC's determination that CCA could not qualify as an "affected domestic producer" due to its failure to support the petition is clearly supported by evidence in the record.

Customs subsequently relied on the ITC's eligibility determination in denying CCA's certification request for offset distributions. See Letter from Douglas M. Browning, U.S. Customs Service, to Jay P. Urwitz, Hale and Dorr LLP (Jan. 18, 2002), C.A.R. Tab 6 at 2 ("The ITC list of affected domestic producers was included in the aforementioned [Federal Register] Notice of August 3, 2001. CCA was not on the list . . . . In view of the ITC response, Customs cannot accept your certification as an affected domestic producer."). As the ITC's decision was both in accord with the Byrd Amendment and supported by the record, we cannot conclude that Customs' reliance thereon was arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with law.

## II.  Eligibility as a Successor Company

CCA asserts that Lenox and Colonial, as original supporters of the petition,[8] qualify as "affected domestic producers," Pls.' Mem. at 8, and that therefore CCA is eligible to claim CDSOA offset distributions on behalf of Lenox and Colonial as a "successor company" under 19 C.F.R. § 159.61(b)(1)(i).[9] Id. at 9; Pls.' Reply at 5.

Customs concluded that CCA was ineligible to claim offset distributions as a successor company because CCA itself originally opposed the petition.  In its letter denying CCA's successorship claim, Customs explained:

> It is Customs['] interpretation of the statute that Congress did not intend to prevent legitimate domestic producers from claiming an offset under the CDSOA simply because of a name change.
>     However, Congressional intent is clear in that the

---

[8] No party to this action disputes that Lenox and Colonial supported the original antidumping petition.

[9] Title 19 C.F.R. § 159.61(b)(1)(i), titled "Successor Company," states as follows:

In the case of a company that has succeeded to the operations of a predecessor company that appeared on the USITC list, the successor company may file a certification to claim an offset as an affected domestic producer on behalf of the predecessor company. In its certification, the company must name the predecessor company to which it has succeeded and it must describe in detail the duly authorized succession by which it is entitled to file the certification.

> CDSOA does prohibit parties who opposed the original petition from qualifying for an offset under the CDSOA by virtue of their acquiring one of the injured domestic parties in that particular case.

Letter from Douglas M. Browning, U.S. Customs Service, to Jay P. Urwitz, Hale and Dorr LLP (Jan. 18, 2002), C.A.R. Tab 6 at 2.

Title 19 C.F.R. § 159.61(b)(1)(i) permits a "successor company" to "file a certification to claim an offset as an affected domestic producer on behalf of the predecessor company." Read in isolation, the regulation might permit a successor to claim an offset distribution even if the successor itself did not qualify as an affected domestic producer.[10]

However, eligibility for certification under the regulation is subject to the limitations imposed by 19 U.S.C. § 1675c, which requires that a claimant (1) have supported the petition, and (2) remain in operation. 19 U.S.C. § 1675c(a)-(b). As discussed above, CCA cannot qualify to receive offset distributions under the statute, because the company did not support the petition. See supra pp. 11-13. The agency regulation cannot remove the statutory requirements of support for the petition and continued operation. Consequently, Customs interprets its regulation to bar claims by successor companies that cannot qualify under the statute. We cannot conclude that this interpretation of the successor regulation is inconsistent with the statute or otherwise

---

[10] We are not asked to decide whether the regulation could be so interpreted in the face of the statutory prohibition.

unpersuasive.

Plaintiffs also rely on <u>Barnhart v. Sigmon Coal Co.</u>, 534 U.S. 438 (2002), in arguing that the proviso that follows the second requirement for "affected domestic producer" status prohibits the regulatory interpretation adopted by Customs here.  In <u>Barnhart</u>, the Supreme Court concluded that because the Coal Industry Retirees Health Benefits Act of 1992 explicitly indicates who may be assigned liability for beneficiaries, the "related persons" provision of the Act did not permit imposition of liability on successors in interest of signatory coal operators.  534 U.S. at 451-54.

Plaintiffs note that the Byrd Amendment precludes eligibility for offset distributions for "[c]ompanies, businesses, or persons that . . . have been acquired by a company or business that is related to a company that opposed the investigation." 19 U.S.C. § 1675c(b)(1).  CCA argues that "the statute excepts only those producers acquired by companies 'related to' companies that opposed the investigation, and not producers acquired directly by an opposing company itself." Pls.' Mem. at 10.  Plaintiffs claim that here, as in <u>Barnhart</u>, the agency's action is inconsistent with explicit statutory provisions limiting eligibility only of companies "related to" companies that opposed the petition.

Plaintiffs' argument, however, ignores the first eligibility requirement of the Byrd Amendment itself.  Customs reasonably

concluded that CCA's failure to qualify under the provisions of the statute prevented the company from qualifying as a successor under 19 C.F.R. § 159.61. Because the question of CCA's eligibility was foreclosed by the express language of the statute, we cannot conclude that <u>Barnhart</u> requires a different result.

Accordingly, because we cannot conclude that Customs' denial of Plaintiffs' application for certification for receipt of payments pursuant to the Byrd Amendment is arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with law, Plaintiffs' motion must be denied.

### III. Lenox and Colonial as Eligible Affected Domestic Producers

Finally, CCA claims that it need not be a successor company in order for Lenox and Colonial to be eligible to receive CDSOA offset distributions. Pls.' Reply at 4-5. CCA states that "Lenox and Colonial did not . . . lose their affected domestic producer status by not being separately incorporated and not being acquired by a 'successor company' as a corporate whole." <u>Id.</u> at 5.

The claim that Lenox and Colonial "remain[] in operation," 19 U.S.C. § 1675c(b)(1)(B), was raised for the first time in the plaintiffs' reply brief. <u>See</u> Compl. at 12; Pls.' Mem. at 7-16; Pls.' Reply Mem. at 4-5; <u>see also</u> Jt. Stip. at 4 para. 5 ("At this time, there is no need for a voluntary remand on the 'remains in operation' issue."). Consequently, this issue is not properly

before the Court and we do not consider it.

## Conclusion

Accordingly, because we cannot conclude that Customs' denial of Plaintiffs' application for certification for receipt of payments pursuant to the Byrd Amendment is arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with law, Plaintiffs' motion must be denied.

_____
Donald C. Pogue
Judge

Dated: New York, New York
April 8, 2003

ERRATUM


<u>Candle Corp. of Am. v. United States</u>, Court No. 02-00751, Slip Op. 03-40, dated April 8, 2003.

Page 1:       The caption should include Muench-Kreuzer Candle Company, Defendant-Intervenor.

April 9, 2003