Slip Op. 04-12

UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |  |
|---|---|---|
| BERGERON'S SEAFOOD, | : | |
| Plaintiff, | : | |
| | : | Before: WALLACH, Judge |
| | : | Court No.: 03-00448 |
| v. | : | |
| | : | |
| UNITED STATES INTERNATIONAL TRADE | : | |
| COMMISSION AND UNITED STATES | : | |
| BUREAU OF CUSTOMS AND BORDER | : | |
| PROTECTION, | : | |
| | : | |
| Defendants. | : | |

[Plaintiff's motion for an evidentiary hearing is denied.]

Decided: February 5, 2004

Peter D. Keisler, Assistant Attorney General; David M. Cohen, Director; Jeanne E. Davidson, Deputy Director; Paul D. Kovac, Trial Attorney, United States Department of Justice, Civil Division, Commercial Litigation Branch; Ellen C. Daly, Senior Attorney, Office of Chief Counsel, for Defendant United States Bureau of Customs and Border Protection; Lyn M. Schlitt, General Counsel; James M. Lyons, Deputy General Counsel; Michael Diehl, Office of the General Counsel, for Defendant United States International Trade Commission; William Brown, for Plaintiff.

**ORDER**

**WALLACH, Judge.**

**I**
**Preliminary Statement**

This case is before the court on Plaintiff's Motion for Evidentiary Hearing and/or

Inclusion of Affidavits in Agency Record ("Plaintiff's Motion"). Plaintiff challenges the United

States International Trade Commission's ("ITC") decision not to include Plaintiff on the list of

"affected domestic producers" eligible to receive distributions of antidumping duties collected on

crawfish tail meat imported from the People's Republic of China pursuant to the Continued

Dumping and Subsidy Act of 2000, 19 U.S.C. §1675c (1999)("CDSOA" or "Byrd

Amendment"). Plaintiff now moves for either an evidentiary hearing to present evidence that it

mailed a questionnaire response to the ITC in satisfaction of the CDSOA, or, alternatively, the

inclusion of two affidavits in the agency record. Defendants[1] argue that the case must be decided

solely upon the agency record and that Plaintiff has failed to present any legal basis for

supplementing the agency record. The Court has jurisdiction pursuant to 28 U.S.C. §1581(i)

(1994).[2] For the foregoing reasons, Plaintiff's Motion is denied.

---

[1]Although the United States Bureau of Customs and Border Protection ("Customs") is also named as a Defendant in this action, all references to the Defendant refer to the ITC unless otherwise noted. As Customs points out in its opposition, Plaintiff's Motion is directed at the ITC as it is the ITC's responsibility to compile the list of domestic producers. See Defendant's, The United States Bureau of Customs and Border Protection, Opposition to Bergeron's Seafood's Motion for Evidentiary Hearing and/or Inclusion of Affidavits in Agency Record ("Customs Opposition") at 1.

[2]At oral argument on February 3, 2004, all parties agreed that the court has jurisdiction pursuant to 28 U.S.C. § 1581(i).

The Court of International Trade has exclusive jurisdiction over "any civil action commenced against the United States, its agencies, or its officers, that arises out of any law of the United States providing for--

  (1) revenue from imports or tonnage;

  (2) tariffs, duties, fees, or other taxes on the importation of merchandise
  for reasons other than the raising of revenue;

  (3) embargoes or other quantitative restrictions on the importation of

## II
## Background

### A
### The Byrd Amendment

The CDSOA modified the Tariff Act of 1930 and provided that duties collected under antidumping or countervailing duty orders be held in accounts for distribution to "affected domestic producers" to offset "qualifying expenditures." Pub. L. No. 106-387, 114 Stat. 1549, 1549A72-1549A73. The ITC administers the Byrd Amendment jointly with the Bureau of Customs and Border Protection ("Customs"). See 19 U.S.C. § 1675c.

The Byrd Amendment is intended to strengthen the remedial purpose of the antidumping and countervailing duty laws. CDSOA, Pub. L. No. 106-387, 114 Stat. 1549, 1549A72-1549A73; Candle Corp. of America and Blyth Inc. v. USITC, 27 CIT __, 259 F. Supp. 2d 1349, 1351 (2003). Under the CDSOA, only "affected domestic producers" are eligible for offsets. 19 U.S.C. § 1675c(a). In order to qualify as an affected domestic producer, a person must demonstrate, *inter alia*, that it "was a petitioner or interested party in support of the petition with

> merchandise for reasons other than the protection of the public health or safety; or
>
> (4) administration and enforcement with respect to the matters referred to in paragraphs (1)-(3) of this subsection and subsections (a)-(h) of this section.
>
> This subsection shall not confer jurisdiction over an antidumping or countervailing duty determination which is reviewable . . . by the Court of International Trade under section 516A(a) of the Tariff Act of 1930 . . . .

28 U.S.C. § 1581(i).

respect to which an antidumping duty order . . . has been entered . . . ." 19 U.S.C. § 1675c(b)(1)(A).

The ITC's prepares a list of "petitioners" and "persons that indicate support of the petition . . . ." 19 U.S.C. § 1675c(d)(1). To be included on the ITC's list, the interested party must indicate support for the petition "by letter or through questionnaire response" that appears on the Commission's administrative record. 19 U.S.C. § 1675c(d)(1); Candle Corp., 259 F. Supp. 2d at 1351.

**B**
**Procedural History**

On September 15, 1997, the ITC entered an antidumping duty order on crawfish tail meat from China. Notice of Amendment to Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order: Freshwater Crawfish Tail Meat From the People's Republic of China, 62 Fed. Reg. 48,218, 48,219 (Sept. 15, 1997). On December 29, 2000[3], the ITC provided Customs with a "list of petitioners and other entities that indicated public support of the petition during each... antidumping and countervailing duty investigation." Letter from Stephen Koplan, Chairman, ITC, to The Honorable Raymond Kelly, Commissioner of Customs, United States Customs Service (Dec. 29, 2000). The list of petitioners in support of the petition on crawfish

---

[3]Although Plaintiff states that the date of this notification was March 15, 2001 in Plaintiff's Motion at 2, both the original Complaint at 6, para. 13 and Opposition of Defendant United States International Trade Commission to Motion for Evidentiary Hearing and/or Inclusion of Affidavits in Agency Record ("Defendant ITC's Opposition") at 3, indicate the correct date as December 29, 2000. The document appears on List 1, Document number 3 of the documents provided to the court by Defendant ITC pursuant to CIT Rule 72(a).

tail meat from China did not include the Plaintiff, Bergeron's Seafood. Id. On July 3, 2002, Customs issued a notice of intent to distribute offset for fiscal year 2002 for distribution of antidumping duties collected in fiscal year 2002, including antidumping duties collected on crawfish tail meat from China. Distribution of Continued Dumping and Subsidy Offset to Affected Domestic Producers, 67 Fed Reg. 44,722 (July 3, 2002).

On August 16, 2002, Jeffery S. Bergeron submitted a letter to the ITC requesting that it revise the list to include the Plaintiff. The basis of this request was a claim that "[Plaintiff] expressed support for the petition in the Commission's original investigation . . . ." Letter from Jeffery S. Bergeron, Owner of Bergeron's Seafood, Inc., to the Honorable Marilyn Abbott, Secretary of the ITC (Aug. 16, 2002). The letter said that "[Plaintiff] did not retain a copy of its questionnaire response in the original investigation and in discussion with Mr. Lynn Featherstone, a copy resides with his office." Id.

On August 27, 2002, the Commission denied the request. It explained that "there is no indication in the Commission's record of the original investigation that the company expressed support. Specifically, there is no indication that [Plaintiff] filed a letter or questionnaire indicating support of the petition in the original investigation." Letter from Deanna Tanner Okun Chairman of the ITC, to Jeffery S. Bergeron, Owner, Bergeron's Seafood, Inc. (Aug. 27, 2002).

On September 13, 2002, Mr. Bergeron again requested that his company be added to the list. This second letter was substantially the same as the August 16, 2002 letter with the exception of the inclusion of a copy of what Mr. Bergeron purported to be Plaintiff's questionnaire response. The letter states: "[p]lease find attached with this request a copy of our Processors' Questionnaire Crawfish Tail Meat from China, which we file in a timely manner by

5

May 5th 1997." Letter to the Honorable Marilyn Abbott, Secretary of the ITC, from Jeffery S. Bergeron, Owner, Bergeron's Seafood, Inc. (Sept. 13, 2002).

On October 2, 2002, the Commission rejected Bergeron's second request, stating that: "we completed another review of the official record of the original investigation on crawfish tail meat from China. We can find no copy of a questionnaire response from [Plaintiff] in our record nor any indication that [Plaintiff] ever filed a questionnaire with the Commission." Letter to Jeffery S. Bergeron, Owner, Bergeron's Seafood, Inc., from Deanna Tanner Okun, Chairman of the ITC (Oct. 2, 2002).

On January 27, 2003, Plaintiff's counsel sent a request for reconsideration to the ITC. This request included affidavits by Jeffery Bergeron and an independent tax accountant, Mary Gail Petro. Mr. Bergeron indicated that, with the assistance of Ms. Petro, he completed the questionnaire indicating support for the petition, signed it, and gave it to Ms. Petro to be mailed on April 17, 1997. Ms. Petro indicated that she helped Mr. Bergeron complete the questionnaire, that it indicated support for the petition, and that she mailed it sometime around April 17, 1997. Letter to the Honorable Marilyn Abbott, Secretary of the ITC, from William E. Brown, attorney for Bergeron's Seafood, Inc. (Jan. 27, 2003).

On May 1, 2003, the ITC denied Plaintiff's request of January 29, 2003, stating :

> After examining the partial questionnaire you attached to your request, and the affidavits that it was mailed in a timely manner, we completed another review of the official record of the original investigation of crawfish tail meat from China. We can find no copy of a questionnaire response from [Plaintiff] in our record nor any indication that [Plaintiff] filed a questionnaire response with the Commission."

Letter to William E. Brown, attorney for Bergeron's Seafood, Inc., from Deanna Tanner Okun, Chairman of the ITC (May 1, 2003). The ITC's letter goes on to explain that because the

underlying investigation was a record proceeding, the ITC must rely solely on the record established in the investigation. Id.

### III
### Applicable Legal Standard

This court has discretion to grant an evidentiary hearing as provided for in Rule 43 of the CIT rules which states that "When a motion is based on facts not appearing in the record, the court may hear the matter on affidavits presented by the respective parties, but the court may direct that the matter be heard wholly or partly on oral testimony or deposition." USCIT R. 43(c); see also Ammex, Inc. v. United States, 23 CIT 549, 555, 62 F. Supp. 2d 1148, 1156 (1998), discussed *infra* at 9.

### IV
### Arguments

Plaintiff moves for an evidentiary hearing to present evidence that it mailed a questionnaire response in support of the petition for an antidumping duty order on crawfish tail meat imported from China in satisfaction of Section (d)(1) of the CDSOA, or, alternatively, for the inclusion of two affidavits submitted to the ITC in the agency record. Plaintiff's Motion at 1. Defendant[4] claims that Plaintiff's motion amounts to an attempt to insert non-record evidence into the proceedings and is therefore contrary to law. Defendant ITC's Opposition at 1.

### V
### Discussion

---

[4] Defendant Customs supports the ITC's position that this court's consideration should be limited to the administrative record, and that the exceptions enumerated in Ammex do not apply. See Customs Opposition at 3.

7

Plaintiff's arguments for an evidentiary hearing are based primarily on equitable grounds. Plaintiff states that "[t]he plaintiff's owners are citizens who feel wronged by the government and seek their day in court - an opportunity to tell their story." Plaintiff's Motion at 2.

Plaintiff claims to have found no authority precluding the granting of its motion. Plaintiff states that it has "not found or been cited a definitive case that prohibits the taking of evidence in an action to determine eligibility under CDSOA." and that "[t]here does not appear to be a statute, case, or rule prohibiting the taking of testimony and other evidence in an action for declaratory judgment or in an action for judgment upon the agency record where the agency has not resolved the factual issue." Plaintiff's Motion at 1, 9.

The legal basis for Plaintiff's motion lies in what Plaintiff claims is the court's discretion to hold an evidentiary hearing under USCIT R. 57 (Declaratory Judgment), USCIT R. 43(a), (c) (authorizing the taking of testimony at trials of declaratory judgment and on motions), and USCIT R. 56.1 (Judgment Upon an Agency Record for an Action Other Than That Described in 28 U.S.C. §1581(c)).[5] Plaintiff's Motion at 1.

---

[5] In a post-oral argument memorandum, Plaintiff does cite to <u>Fomby-Denson v. Dept. of the Army</u>, 247 F.3d 1366 (Fed. Cir 2001) for the proposition that the court may consider evidence submitted after an agency proceeding is concluded. In <u>Fomby-Denson</u>, the Merit Systems Protection Board denied the plaintiff's request for enforcement of a settlement agreement related to her termination from the Army. The Federal Circuit upheld the Board's decision and found that the agreement would contravene public policy. The Federal Circuit stated that "we may therefore decide this appeal on a ground not considered by the Board" <u>Fomby-Denson</u>, 247 F.3d at 5. However, here the court is limited to the administrative record. <u>Fomby-Denson</u> is a contract case and is distinguishable from the international trade cases discussed herein, which do require the court's consideration to be limited to the administrative record. <u>See</u>, <u>e.g.</u>, <u>Ammex</u>, 23 CIT at 549, 571 (explaining that where the court reviews a decision by Customs, "the Court's review is limited to the record that was before the administrative decisionmakers").

Defendant argues that Plaintiff's motion should be denied primarily because the court is required to decide the case based solely upon the agency record.[6] Defendant claims that this case must be decided solely upon the administrative record as required by 28 U.S.C. 1581(i) and that the ITC is likewise limited by the CDSOA. Defendant says that:

> Actions heard pursuant to section 1581(i) jurisdiction are reviewed based on the record. 28 U.S.C. § 2640(e) (Court of International Trade to review as provided in 5 U.S.C. § 706); *Candle Corp. of America*, 259 F. Supp. 2d at 1353 (actions heard under 28 U.S.C. § 1581(i), including Byrd Amendment litigation, to be decided under 5 U.S.C. § 706 ); 5 U.S.C. § 706 (matters to be reviewed based on the "whole record"); *Ammex, Inc. v. United States*, 23 CIT 549, 555, 62 F. Supp. 2d 1148, 1156 (1998) ("whole record" interpreted to mean all the documents before the agency at the time the decision was made).

Defendant ITC's Opposition at 6.[7]

Defendant adds that under the CDSOA the ITC is required to compile its list of petitioners and persons in support of the petition based on letters or questionnaire responses on its administrative record. Id.; see 19 U.S.C. § 1675c(d)(1). Defendant further states that, but for one exception not applicable here,[8] under the statute there is no other way to be included on the

---

[6] Defendant also addresses the factual bases of Plaintiff's argument, pointing out that Plaintiff's questionnaire response, which was once supposedly missing was later produced without explanation. Although Plaintiff says that it submitted one questionnaire response, ordinarily during the course of an investigation the ITC asks domestic producers to complete questionnaire responses in both the preliminary and final phases, neither of which were found upon investigation. Defendant ITC's Opposition at 4, 13 n. 16.

[7] Jurisdiction under 28 U.S.C. 1581(i) is not limited to actions reviewable solely on the agency record, see, e.g., J.S. Stone, Inc. v. United States, 2003 Ct. Intl. Trade LEXIS 149 (CIT 2003); Consol. Bearings Co. v. United States, 348 F.3d 997 (Fed. Cir. 2003).

[8] The defendant spells out this exception in its Opposition:

The sole exception is for "those cases in which . . . . *the Commission's records do not permit an identification of those in support of a petition* . . . ." 19 U.S.C. § 1675c(d)(1) (emphasis added). In such an instance, "the Commission shall consult with the

9

ITC list.

Defendant claims Plaintiff's argument ignores the court's holding in <u>Ammex</u>, 23 CIT at 549, wherein the court enumerated several limited circumstances under which the administrative record could be amended, none of which are alleged by Plaintiff. Defendant ITC's Opposition at 7. Defendant ITC also argues that Plaintiff's motion should be denied based on the finality and administrative efficiency inherent in the Byrd Amendment. Defendant ITC's Opposition at 12.

In <u>Ammex</u>, this court enumerated several acceptable justifications for supplementing the administrative record:

1-The agency relied on documents not in the record;

2-The agency failed to adequately explain its action;

3-The agency acted in bad faith or exhibited improper behavior; and

4-The agency was required to provide clarification of certain technical terms.

<u>Ammex</u>, 23 CIT at 555-557. These exceptions are not alleged in this case. Plaintiff does not claim that the agency relied upon documents not in the record; there is no claim that the agency's action was not adequately explained; there has been no allegation that the agency acted in bad faith or exhibited improper behavior; and there are no technical terms in need or clarification. Therefore, the court denies Plaintiff's request to supplement the agency record.

---

administering authority to determine the identity of the petitioner and those domestic parties who have entered appearances during administrative reviews conducted by the administering authority under section 1675 of this title." 19 U.S.C. § 1675c(d)(1). Thus, if the Commission's records do not permit the identification of those in support, then the Commission is to consult with the administering authority, which in turn will consult its records to determine which parties have entered appearances in administrative reviews.

Defendant ITC's Opposition at 3.

## V
## Conclusion

For the foregoing reasons, Plaintiff's Motion For Evidentiary Hearing And/Or Inclusion

Of Affidavits In Agency Record is denied.


  /S/   Evan J. Wallach  
  Evan J. Wallach, Judge



Dated: February 5, 2004  
  New York, New York