Slip Op. 11-27

UNITED STATES COURT OF INTERNATIONAL TRADE

_____
                                                    :
GIORGIO FOODS, INC.,                                :
                                                    :
               Plaintiff,                           :
                                                    :
        v.                                          :
                                                    :
UNITED STATES,                                      :        Before:      WALLACH, Judge
                                                    :        Court No.:   03-00286
               Defendant,                           :
                                                    :
        and                                         :
                                                    :
L.K. BOWMAN COMPANY,                                :
MONTEREY MUSHROOMS, INC., and                       :
MUSHROOM CANNING COMPANY,                           :
                                                    :
               Defendant-Intervenors.               :
_____              :

[Plaintiff's Motion to Complete the ITC Record is GRANTED.]

                                    Dated:          March 08, 2011

Arnold & Porter, LLP (Michael T. Shor and Sarah Brackney Arni) for Plaintiff Giorgio Foods,
Inc.

Tony West, Assistant Attorney General; Jeanne E. Davidson, Director, Franklin E. White, Jr.,
Assistant Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice
(David S. Silverbrand and Melissa M. Devine) and James M. Lyons, General Counsel, Neal J.
Reynolds, Assistant General Counsel, U.S. International Trade Commission (Patrick V.
Gallagher, Jr.) for Defendant United States.

Akin, Gump, Strauss, Hauer & Feld, LLP (Valerie A. Slater) for Defendant-Intervenors L.K.
Bowman Company and Mushroom Canning Company.

Kelley Drye & Warren LLP (Michael J. Coursey and R. Alan Luberda) for Defendant-Intervenor
Monterey Mushrooms, Inc.

## OPINION

**Wallach, Judge:**

## I
## INTRODUCTION

In its Motion to Complete the ITC Record, Plaintiff Giorgio Foods, Inc. ("Giorgio" or "Plaintiff") seeks to compel Defendant United States to file with the court and to provide to the parties as part of the administrative record various documents from the United States International Trade Commission's ("ITC" or "Commission") 1998-99 preliminary and final antidumping injury investigations regarding Certain Preserved Mushrooms from Chile, China, India, and Indonesia, Invs. 731-TA-776-779. Plaintiff's Motion to Complete the ITC Record ("Plaintiff's Motion").[1] The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1581(i).

For the reasons stated below, Plaintiff's Motion is GRANTED.

---

[1] Plaintiff also requests "confidential versions of documents on the records originally filed by the Commission and U.S. Customs and Border Protection ['Customs']." Plaintiff's Motion at 2. Defendant Customs indicated it will comply with this request. Defendant's Response to Plaintiff's Motion to Compel the United States International Trade Commission to Supplement Administrative Record at 3 n.1. Defendant ITC is ORDERED to also provide confidential versions of record documents that the ITC filed or will file.

2

**II**
**BACKGROUND**

In order to qualify for distributions under the Continued Dumping and Subsidy Offset

Act ("Byrd Amendment" or "CDSOA"),[2] an entity must qualify as an "affected domestic

producer." 19 U.S.C. § 1675c(a); see also SKF USA, Inc. v. U.S. Customs and Border Prot., 556

F.3d 1337 (Fed. Cir. 2009), cert. denied, 2010 U.S. LEXIS 3940 (2010); Cathedral Candle Co. v.

U.S. Int'l Trade Comm'n, 400 F.3d 1352 (Fed. Cir. 2005).[3] An "affected domestic producer" is

defined as either a "petitioner" or an "interested party in support of the petition with respect to

which an antidumping duty order . . . has been entered," the later indicating its support "by letter

or through questionnaire response." 19 U.S.C. § 1675c(b)(1)(A), (d)(1).

Prior to the enactment of the CDSOA, from 1998-99, the Commission conducted

antidumping duty injury investigations concerning certain preserved mushrooms from Chile,

China, India, and Indonesia. See Plaintiff's First Amended Complaint ("Plaintiff's Complaint")

at 6.[4] In response to the ITC's questionnaires in these investigations, Plaintiff "indicated that it

---

[2] 19 U.S.C. § 1675c (2000), Pub. L. No. 106-387, Title X, §§ 1001-03, 114 Stat. 1549, 1549A73-A75 (2000), repealed by Pub. L. No. 109-171, Title VII, Subtitle F, § 7601(a), 120 Stat. 4, 154 (2006).

[3] For a more thorough discussion of the Byrd Amendment, see Bergeron's Seafood v. U.S. Int'l Trade Comm'n, 28 CIT 148, 149, 306 F. Supp. 2d 1353 (2004) (Part II.A).

[4] The investigations resulted in the following: Notice of Antidumping Duty Order: Certain Preserved Mushrooms from Chile, 63 Fed. Reg. 66,529 (December 2, 1998); Notice of Amendment of Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order: Certain Preserved Mushrooms from the People's Republic of China, 64 Fed. Reg. 8,308 (February 19, 1999); Notice of Antidumping Duty Order: Certain Preserved Mushrooms from Indonesia, 64 Fed. Reg. 8,310 (February 19, 1999); Notice of Amendment of Final Determination of Sales at Less Than Fair Value and Antidumping Duty Order: Certain Preserved Mushrooms from India, 64 Fed. Reg. 8,311 (February 19, 1999).

(1) took no position with respect to the petition filed against preserved mushrooms from Chile, China, and Indonesia, and (2) opposed the petition with respect to India." Id. at 8. However, Giorgio alleges it "took numerous actions to support the petition [[ confidential information ]] ." Id. at 6.

The ITC "determined that Giorgio was not eligible to be placed on its petition support list for these orders," finding that the documents reviewed "showed that Giorgio was not a petitioner in the investigations and did not express support for the petition in its questionnaire response." Opposition of Defendant United States International Trade Commission to Plaintiff's Motion to Complete the Agency Record ("ITC's Opposition") at 6. In May 2003, Giorgio commenced this action to challenge its exclusion from the list of affected domestic producers compiled by the ITC and from the resulting distributions by U.S. Customs and Border Protection of funds under the CDSOA. Plaintiff's Complaint at 5.

Giorgio is currently seeking to include in the administrative record documents from the preliminary and final antidumping injury investigations regarding Certain Preserved Mushrooms from Chile, China, India, and Indonesia, Invs. 731-TA-776-779. Plaintiff's Motion at 1. Giorgio alleges the additional documents requested are necessary to prove that Giorgio "took no actions to oppose any of the four petitions" and "took numerous significant actions to support the petitioners" and that Giorgio was therefore "unconstitutionally denied CDSOA benefits solely as a result of viewpoint-based speech, i.e. not checking off a questionnaire box indicating that it

4

supported the petitions." Id. at 10.[5]

## III
## STANDARD OF REVIEW

The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1581(i). In residual

jurisdiction cases, this court reviews the matter as provided in the Administrative Procedure Act,

which directs the court to "review the whole record or those parts of it cited by a party." 28

U.S.C. § 2640(e); 5 U.S.C. § 706 (emphasis added). The United States Supreme Court has

defined "whole record" within 5 U.S.C. § 706 as "the full administrative record that was before

the Secretary at the time he made his decision." Defenders of Wildlife v. Dalton, 24 CIT 1116,

1118 (2000) (quoting Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 420, 91 S.

---

[5] Plaintiff asserts that the relief it seeks in the underlying litigation is not precluded by the Federal Circuit's decision in SKF, 556 F.3d 1337. See Plaintiff's Motion at 9-10 ("It is Giorgio's position that the First Amendment, and the Federal Circuit's decision in SKF, require that CDSOA eligibility determinations be predicated on these kind of actions taken by domestic producers to support petitions, and not based on viewpoint-based speech.").

Ct. 814, 28 L. Ed. 2d 136 (1971)).[6]

In an administrative review case, it is rare that a federal court will consider information outside of the record submitted. See Advanced Tech. & Materials Co. v. United States, Slip Op. 2010-59, 2010 Ct. Intl. Trade LEXIS 60 at *12 (May 18, 2010) ("It is black letter law that review in federal court must be confined to the agency's record; consideration of information outside of the record is deemed appropriate only in the rare case.") (quotations omitted); see also Murakami v. United States, 46 Fed. Cl. 731, 735 (2000), aff'd, 398 F. 3d. 1342 (Fed. Cir. 2005) (recognizing the tension between "extra-record" evidence and a record-based standard of review).[7]

Supplementing the administrative record with outside information is somewhat distinct from

---

[6] In all cases where jurisdiction is based on 28 U.S.C. § 1581(i), the record is also defined pursuant to USCIT R. 73.3, which requires agencies to file the following documents in certain actions where judicial review is "upon the basis of the record made before an agency":

    (1)    A copy of the contested determination and the findings or report on which such determination was based.

    (2)    A copy of any reported hearings or conferences conducted by the agency.

    (3)    Any documents, comments, or other papers filed by the public, interested parties, or governments with respect to the agency's action. The agency shall identify and file under seal any document, comment, or other information obtained on a confidential basis, including a non-confidential description of the nature of such confidential document, comment or information.

    (4)    A certified list of all items specified in paragraphs (1), (2) and (3) . . . .

USCIT R. 73.3(a).

[7] Plaintiff is correct that its argument that "this case should not be limited to any agency record" is "not necessary to the disposition of this motion." Plaintiff's Motion at 11. Therefore it is unnecessary for the court to address this argument.

6

supplementing the record "upon a showing that the administrative record is not complete."

Advanced Tech., 2010 Ct. Intl. Trade LEXIS at \*13. "Although record supplementation on these grounds is often viewed as one of the 'exceptions' to the record rule . . . it is described more accurately as 'completing' the record because the material sought to be included is only that which (allegedly) should have been a part of the record to begin with." Id. at \*13-14.

"Where an agency presents a certified copy of the complete administrative record, as was done in this case, 'the court assumes the agency properly designated the Administrative Record absent clear evidence to the contrary.'" Defenders of Wildlife, 24 CIT at 1119 (quoting Ammex, Inc. v. United States, 23 CIT 549, 549, 62 F. Supp. 2d 1148 (1999)); see ITC's Certificate appended to the Administrative Record, Doc. No. 11, at 1. "In a motion to complete the administrative record, a party must do more than simply allege that the record is incomplete. Rather, a party must provide the Court with reasonable, non-speculative grounds to believe that materials considered in the decision-making process are not included in the record. The burden therefore rests on Plaintiffs to provide evidence that the appropriate decisionmakers either directly or indirectly considered the missing documents while making their decision." Defenders of Wildlife, 24 CIT at 1119 (citations and quotations omitted). Nonetheless, "a document need not literally pass before the eyes of the final agency decision maker to be considered part of the administrative record." Miami Nation of Ind., Inc. v. Babbitt, 979 F. Supp. 771, 777 (N.D. Ind. 1996) (quoting Clairton Sportsmen's Club v. Pa. Turnpike Comm'n, 882 F. Supp. 455, 464 (W.D. Pa. 1995)).

## IV
## DISCUSSION

Plaintiff alleges that the administrative record is incomplete because the requested documents were all "before the Commission at the time it made its several determinations that Giorgio was not eligible for distributions" under the CDSOA and because the documents are all "relevant to Giorgio's claims that it was denied CDSOA distributions based solely on viewpoint-based speech, in violation of the First Amendment and Equal Protection Clause." Plaintiff's Motion at 2-3. Plaintiff notes it is "not in this Motion seeking to supplement the record with additional documents that were not previously before the Commission." Id. at 10.

Defendant responds that its inquiry for this particular case, to determine Giorgio's eligibility for distributions under the CDSOA, was extremely limited, necessitating consultation of "only a small number of documents, which included the public staff reports from the Commission's original investigations, the pages of Giorgio's questionnaire in the investigations reporting Giorgio's position on the petitions for Chile, China, and Indonesia, and the letters filed by Giorgio with the Commission during the distribution process for the Byrd Amendment," and that "the court's review should be based on the record that the Commission relied upon in making its Byrd Amendment determination." ITC's Opposition at 11 (capitalization modified), 14.

The administrative record provided by the ITC is incomplete because not all of the documents considered directly or indirectly by the ITC were included. In order for a motion to complete the administrative record to be granted, the movant must show that the documents requested were "considered, even indirectly" by the agency. Ammex, 23 CIT at 555. In order to

8

determine what the agency considered, even indirectly, it is necessary to review what decision is being challenged.  As pointed out by Plaintiff, under the CDSOA and in light of the Federal Circuit's decision in SKF, 556 F.3d 1337, Defendant draws too narrowly what decision was being made and what records should have been consulted. Plaintiff's Motion at 9 ("Remarkably, the Commission has not provided as part of this limited 'administrative record' some of the most basic documents that it necessarily would have had to review" under the CDSOA.).

The CDSOA requires an inquiry that necessitates reviewing the original investigations: "The Commission shall forward to the Commissioner . . . a list of petitioners and persons with respect to each order and finding and a list of persons that indicate support of the petition by letter or through questionnaire response." 19 U.S.C. § 1675c(d)(1) (emphasis added).[8] Therefore, in order to complete the statutorily mandated task in compiling these lists, the ITC must, at the least, turn to the original investigations to find those parties that indicated support by letter or through questionnaire response.

Indeed, the ITC informed Plaintiff during an exchange of letters that "the record of the original investigation raises troubling issues concerning whether or not Giorgio Foods supported the petition," conceding that the decision was not as clear as it now asserts and indicating its consultation may have gone beyond the record currently submitted to that of the original investigations. Letter from Stephen Koplan, Chairman, ITC to Michael Shor, Arnold & Porter (October 11, 2001) Public Record List 1, Doc. 6 at 1 (emphasis added).  Even assuming that the

---

[8] Defendant incorrectly characterizes this inquiry when stating that "[u]nder the Byrd Amendment, the Commission is required to make one specific determination: . . . whether Giorgio was either a petitioner, or expressed actual support for the petition by letter or questionnaire response." ITC's Opposition at 14.

9

ITC "when making its determination for Giorgio . . . only considered the specific documents that are included in the certified listing it submitted to the Court in this action" and did not "scour the record of its original investigations, or review any other documents" to make its determination, ITC's Opposition at 17-18, what the ITC directly consulted does not necessarily determine the administrative record. The records of the underlying investigations necessarily created the environment in which the decision was made by the ITC and were hence indirectly consulted.

In addition, the Federal Circuit has construed the Byrd Amendment "to only permit distributions to those who actively supported the petition (i.e., a party that did no more than submit a bare statement that it was a supporter without answering questionnaires or otherwise actively participating would not receive distributions)." SKF, 556 F.3d at 1354 n.26 (emphasis added).[9] In order to determine those parties that answered questionnaires or otherwise actively participated, the ITC would necessarily have to consult the underlying investigations. See Plaintiff's Motion at 16.

Of the specific documents requested by Plaintiff, the following would be included in the record for the original investigations and therefore would have been consulted by the ITC in making its determination, at least indirectly:

      1. the original antidumping petitions;
      2. all reports, memoranda, or communications reporting on,

---

[9] SKF, 556 F.3d 1337, and the standards set forth by the Federal Circuit in that case were promulgated after the ITC had made its determination in this case. However, the general disfavor toward the retroactive application of laws does not often apply to judicial opinions; "judicial interpretations of existing statutes and regulations are routinely given retroactive application on the theory that courts do not make new law but simply state what the statutes and regulations meant before as well as after the court's decision." SKF USA, Inc. v. United States, 512 F. 3d 1326, 1330 (Fed. Cir. 2007).

mentioning or describing a site visit by ITC personnel to Giorgio's facilities;

3.  transcripts of the Commission staff conference and hearing;
4.  all communications between Giorgio and/or its counsel and the ITC Staff or Commission, including but not limit[ed] to full questionnaire responses, letters, e-mails, briefs, formal comments, and records of telephone communications;
5.  all communications between Petitioners and/or their counsel and the ITC Staff or Commission, including but not limited to letters, comments, questionnaire responses, records of telephone communications, e-mails, and formal communications including the proprietary version of [P]etitioners' post-conference, pre-hearing, and post-hearing briefs, final comments, and all other written submissions;
6.  all final staff reports.

Plaintiff's Motion at 1-2.  Because each of the above documents was consulted, even if indirectly, by the ITC, they are all part of the administrative record that must be submitted.

## V
## CONCLUSION

For the reasons above, Plaintiff's Motion to Complete the ITC Record is GRANTED.


__/s/ Evan J. Wallach____
Evan J. Wallach, Judge


Dated:  March 08, 2011
       New York, New York

11